In re Interest of DeWayne G., Jr., and Devon G.,
children under 18 years of age.
State of Nebraska, appellee, v. DeWayne G., Sr., appellant.

625 N.W. 2d 849

Filed May 8, 2001.   No. A-00-1074.

Jay A. Ferguson for appellant.

James S. Jansen, Douglas County Attorney, and Kim B. Hawekotte for appellee.

Thomas K. Harmon for guardian ad litem.

Irwin, Chief Judge, and Sievers and Inbody, Judges.

Irwin, Chief Judge.

## I. INTRODUCTION

DeWayne G., Sr. (DeWayne), appeals from an order of the separate juvenile court of Douglas County, Nebraska, which terminated his parental rights to DeWayne G., Jr. (DeWayne Jr.), and Devon G. On appeal, DeWayne challenges, inter alia, the court's ruling denying him a hearing on whether the State had made reasonable efforts to preserve and reunify the family pursuant to Neb. Rev. Stat. § 43-283.01 (Reissue 1998). Because we find the juvenile court erred in denying this hearing, we reverse, and remand.

## II. BACKGROUND

The record indicates that both DeWayne Jr. and Devon were born to the same mother and that DeWayne is the father of both children. DeWayne was not married to the children's mother, however, and is married to another woman and has other children with his wife.

DeWayne Jr. was born on February 14, 1996, and was taken into custody by the State on February 16. DeWayne Jr. was taken into the State's custody because he was born with cocaine in his system. According to DeWayne's testimony, DeWayne Jr.'s natural mother had visitation rights after he was born, and DeWayne accompanied her to visits "twice a week" for approximately 13 months during 1996 and 1997. In April 1997, the natural mother's visitation rights were terminated. DeWayne contacted the Department of Health and Human Services to inquire how he could receive visitation rights and was informed that he needed to get his name placed on DeWayne Jr.'s birth certificate. According to DeWayne's testimony, he took the necessary steps to get his name on the birth certificate, and he exercised visitation with DeWayne Jr. throughout April 1997.

Sometime in 1996, DeWayne was sentenced to probation in Missouri for a drug possession charge that occurred in 1995. In June 1997, DeWayne was sentenced to probation in Douglas County for theft charges arising out of incidents that occurred in 1996. In August 1997, DeWayne's probation in Missouri was revoked, and he was sentenced to a treatment program in Missouri. He was out of the State of Nebraska until March 1998.

On October 23, 1997, Devon was born. Like DeWayne Jr., Devon was born with cocaine in his system and was taken into custody by the State almost immediately after birth. DeWayne testified that although he was in Missouri when Devon was born, he spoke with Devon's natural mother on the telephone while she was at the hospital to give birth. In December 1997, the natural mother's parental rights to DeWayne Jr. were terminated, and her parental rights to Devon were terminated in July 1998.

In March 1998, DeWayne had successfully completed the treatment program in Missouri and returned to Douglas County. Between March and August 1998, he exercised visitation with Devon. In June 1998, his parental rights to DeWayne Jr. were ter-

minated, although the termination was ultimately reversed on appeal. See *In re Interest of Dewayne G., Jr.*, No. A-98-697, 1999 WL 111322 (Neb. App. Feb. 23, 1999), *modified* 1999 WL 1338327 (Neb. App. July 27, 1999) (both not designated for permanent publication). In August 1998, DeWayne's probation in Douglas County was revoked, and he was sentenced to 18 months' to 4 years' imprisonment. As such, throughout 1999, DeWayne was incarcerated at a correctional treatment center in Lincoln, Nebraska. During this time, DeWayne did not have visitation with the children, although DeWayne testified that he wrote letters to the Department of Health and Human Services' caseworker several times per week inquiring about the children's well-being and seeking visitation privileges. The caseworker testified that she did not respond to the correspondence that she received from DeWayne, although she acknowledged that he regularly wrote to her during 1997, 1998, 1999, and 2000.

On April 19, 2000, the State filed a petition seeking adjudication of DeWayne Jr. and Devon and seeking to have DeWayne's parental rights to both children terminated. The State alleged termination was appropriate under Neb. Rev. Stat. § 43-292(1), (2), (4), and (7) (Reissue 1998). On May 16, DeWayne filed a motion that requested, inter alia, a hearing pursuant to § 43-283.01 for a determination of whether the State had made reasonable efforts to preserve and reunify the family. On May 26, the court conducted a hearing on the motion, at which time the State asserted that it did not have an obligation to prove that reasonable efforts had been made because it had not sought termination of parental rights under § 43-292(6). At the hearing, the court noted that there had been no evidence presented as to what could be done for a person who was incarcerated, that further evidence would be needed to determine what further needed to be done, and that all that could be done for DeWayne appeared to have been done until the court was shown something to the contrary. The court overruled the motion.

When the case came on for trial, DeWayne renewed his motion for a hearing concerning reasonable efforts. The court once again denied the motion. After the trial, the court adjudicated both children as being under the jurisdiction of the court and found that the State had satisfied its burden to establish that

termination of DeWayne's parental rights was warranted under each section alleged and that termination of parental rights was in the best interests of the children. DeWayne filed this timely appeal.

### III. ASSIGNMENTS OF ERROR

On appeal, DeWayne has assigned eight errors. We note, first of all, that he has not appealed from the court's findings that DeWayne Jr. and Devon should be adjudged to be within the jurisdiction of the juvenile court. DeWayne has, in essence, challenged the court's findings regarding termination of his parental rights. DeWayne has further challenged the court's ruling denying him a hearing on whether the State had satisfied the reasonable efforts requirements of § 43-283.01. Because our resolution of this issue mandates that we reverse, and remand the case, we need not further discuss DeWayne's remaining assignments of error or the court's findings related thereto.

### IV. ANALYSIS

■ The 1998 Nebraska Legislature made significant changes to the Nebraska Juvenile Code by passing 1998 Neb. Laws, L.B. 1041. Among the major changes to the juvenile code effected by L.B. 1041 include the enactment of § 43-283.01. Section 43-283.01 provides, in pertinent part, as follows:

> (2) Except as provided in subsection (4) of this section, *reasonable efforts shall be made to preserve and reunify families* prior to the placement of a juvenile in foster care to prevent or eliminate the need for removing the juvenile from the juvenile's home *and to make it possible for a juvenile to safely return to the juvenile's home.*

(Emphasis supplied.) Subsection (4) of § 43-283.01 provides specific circumstances under which reasonable efforts to preserve and reunify a family are not required, including circumstances where the parent has inflicted violence or harm on the juvenile or a sibling. Prior to the enactment of § 43-283.01, there was no provision in the juvenile code which mandated reasonable efforts to preserve and reunify the family.

■ Neb. Rev. Stat. § 43-246 (Reissue 1998), which contains a statement of the legislative purposes and goals of the juvenile code, indicates that the juvenile code shall be construed to effectuate the following:

(5) To achieve the purposes . . . of this section in the juvenile's own home whenever possible, separating the juvenile from his or her parent when necessary for his or her welfare, the juvenile's health and safety being of paramount concern, or in the interest of public safety and, when temporary separation is necessary, to consider the developmental needs of the individual juvenile in all placements, to consider relatives as a preferred potential placement resource, *and to make reasonable efforts to preserve and reunify the family if required under section 43-283.01.*

(Emphasis supplied.) As noted above, § 43-283.01 indicates that reasonable efforts shall be required except in a limited set of circumstances, and reasonable efforts are required both before a juvenile is removed from the home and after the juvenile has been placed in foster care to make it possible for the juvenile to return to the home.

The statute does not specifically delineate what constitutes "reasonable efforts to preserve and reunify the family," and it seems apparent that what level of efforts are considered "reasonable" will vary greatly from case to case. For example, it is likely that what constitutes reasonable efforts as required by Neb. Rev. Stat. § 43-254 (Reissue 1998) prior to an emergency removal may well be a different level of efforts than what is required in postdetention situations where the juvenile has been placed in foster care.

In the present case, DeWayne filed a motion specifically requesting a hearing on whether the State was making reasonable efforts as required under § 43-283.01. In the course of a pretrial hearing, the court denied DeWayne's motion. In so ruling, the court noted that a prior finding had been made that reasonable efforts were not required prior to removing the children from their natural mother's care because of "immediate, exigent circumstances." The court further noted that DeWayne was incarcerated and therefore was unable to care for them. The court recognized that reasonable efforts "are still required," but held that there had been no evidence presented "as to what can be done for a guy who's incarcerated." DeWayne then renewed his motion for a hearing on reasonable efforts when the adjudication and termination trial began. The court again overruled the

motion. On appeal, DeWayne has assigned as error and argued that the trial court erred in denying him a hearing on whether reasonable efforts were being made pursuant to § 43-283.01.

DeWayne points to the plain language of § 43-283.01 and argues that it clearly indicates that reasonable efforts "shall be made" to preserve and reunify the family and make it possible for a juvenile to be safely returned to the home, unless one of the exceptions provided in § 43-283.01 applies. The State argues, in response, that reasonable efforts are only required when the State seeks termination of parental rights pursuant to § 43-292(6), which specifically provides that termination is appropriate where reasonable efforts have failed to correct the condition leading to out-of-home placement. Because the State did not seek termination of DeWayne's parental rights under § 43-292(6), but, rather, sought termination under several other subsections of § 43-292, the State asserts that "reasonable efforts to preserve a family are not necessary." Brief for appellee at 14.

The State specifically cites us to cases, such as *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997), and *In re Interest of Levanta A. and Leronn A.*, No. A-00-462, 2001 WL 46998 (Neb. App. Jan. 9, 2001) (not designated for permanent publication), for the proposition that " 'whether or not the State has made reasonable efforts to preserve and reunify the family is a factor only under §43-292 (6) . . . . The remaining grounds for termination . . . concern only the actions, ability, and behavior of the parents and the best interests of the children.' " Brief for appellee at 14. Although the State has correctly noted that both this court and the Supreme Court have previously so held, the holdings cited by the State have no bearing on the issue before us in the present case. In *In re Interest of Joshua M. et al.*, the Supreme Court noted that there was no specific statutory requirement for the State to implement plans for rehabilitation of a parent. *In re Interest of Joshua M. et al.* was decided prior to the implementation of § 43-283.01, and the issue before the court was whether certain provisions of a previously implemented plan were material provisions in the context of a termination of parental rights under § 43-292(6). In *In re Interest of Levanta A. and Leronn A., supra*, this court recognized that there is no requirement that the State prove reason-

able efforts as an element of termination of parental rights under the various subsections of § 43-292 other than subsection (6).

By contrast, the issue in the present case is not whether reasonable efforts must be proved as an element of termination of parental rights. As the State correctly notes, such efforts are not an element of termination except under § 43-292(6). Rather, the issue before us in the present case is whether, when a parent has properly raised the issue, the State must demonstrate that reasonable efforts are being made to preserve and reunify the family under § 43-283.01. The plain language of § 43-283.01 makes it clear that the State has an obligation to make such efforts, at least in all cases either where the State has begun actions to remove a child from the home or where the child has, in fact, already been removed from the home. Where a parent properly seeks a determination of whether the State has complied with the mandatory language of § 43-283.01, the State must demonstrate such reasonable efforts are being made and the court must determine whether the State has complied with § 43-283.01. In the cases referenced by the State above, the parent raised the issue only by way of collaterally attacking the rehabilitation plans entered by the court or by asserting that such is an additional element of termination proceedings, neither of which is a proper means of raising the issue. Whether the State complied with the provisions of § 43-283.01 and whether termination was sufficiently proved under the various subsections of § 43-292 that were pled are two separate issues.

In the present case, DeWayne specifically requested a hearing on whether the State was complying with the mandatory provisions of § 43-283.01. The trial court denied the motion. As such, the record before us is not adequate for us to determine whether reasonable efforts were made to preserve and reunify the family. Similarly, we make no comment on what efforts are required in a case such as the present one, as that issue is also not before us. We specifically do not address the merits of DeWayne's motion, but, rather, reverse, and remand the matter solely because he was entitled to a hearing where the State must demonstrate compliance with the statutory directive. Additionally, we make no comment on the sufficiency of the State's proof for termination on the various grounds alleged.

Finally, we note that the State, as well as the trial court, has argued that such a hearing is not required in all cases because the law has always provided that termination of parental rights may be sought by an original petition, and a prior adjudication is not necessary. Our holding in the present case is not inconsistent with this notion, but, rather, recognizes that the statutory changes effectuated by the passage of L.B. 1041 now require the State to make reasonable efforts whenever removal of a child becomes part of the State's involvement with the family. In appropriate circumstances, an original petition for termination may still be filed. Where the State has elected to remove the child from the family, however, § 43-283.01 provides that reasonable efforts must be made to allow for the safe return of the child to the home.

## V. CONCLUSION

Because we find that DeWayne was entitled to a hearing on whether reasonable efforts have been made to preserve and reunify the family and allow for the safe return of the children to the home, we reverse the juvenile court's order terminating DeWayne's parental rights and remand the matter.

REVERSED AND REMANDED.