IN RE INTEREST OF DEWAYNE G., JR., AND DEVON G., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
DEWAYNE G., SR., APPELLANT.
638 N.W.2d 510

Filed January 25, 2002. No. S-00-1074.

Jay A. Ferguson for appellant.

James S. Jansen, Douglas County Attorney, and Kim B. Hawkotte for appellee.

Thomas K. Harmon, of Respeliers and Harmon, P.C., for guardian ad litem.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

The parental rights of DeWayne G., Sr. (DeWayne), to DeWayne G., Jr. (DeWayne Jr.), and Devon G. were terminated on September 12, 2000, by the separate juvenile court of Douglas County. The court ordered termination upon its finding that the

following conditions existed: abandonment under Neb. Rev. Stat. § 43-292(1) (Reissue 1998); neglect under § 43-292(2); parental unfitness under § 43-292(4); and because the juveniles had been in out-of-home placement for 15 or more months of the most recent 22 months under § 43-292(7). DeWayne appealed. The Nebraska Court of Appeals reversed the juvenile court's decision and remanded the cause for further proceedings. The State petitioned for further review, which we granted.

## FACTUAL BACKGROUND

DeWayne Jr. was born on February 14, 1996. On February 16, DeWayne Jr. was placed in the temporary custody of the Department of Social Services, now the Department of Health and Human Services (DHHS), because he was born with cocaine in his system.

At the time of DeWayne Jr.'s birth, DeWayne was married to a woman with whom he had three daughters. DeWayne and DeWayne Jr.'s biological mother were never married.

DeWayne's criminal history consists of felony convictions both before and after DeWayne Jr.'s birth. In 1996, DeWayne was found guilty of possession of crack cocaine in Holt County, Missouri. On February 7, 1996, DeWayne was sentenced by the circuit court for Holt County to 2 years' supervised probation. Almost a year later, in January 1997, DeWayne was sentenced in Douglas County, Nebraska, to intensive supervised probation for two theft convictions related to an incident which occurred in 1996. Later, in June 1997, DeWayne was sentenced in Douglas County, Nebraska, to intensive supervised probation on two additional theft convictions related to a second separate incident which occurred in 1996.

While on probation for these five felony convictions, DeWayne violated the terms of his Nebraska probation. On September 16, 1997, DeWayne's Nebraska probation officer observed DeWayne socializing at a time when his probation order required him to be at work. When DeWayne's probation officer approached him, DeWayne attempted to flee but was apprehended by the officer. DeWayne pled guilty to misdemeanor assault and operation of a vehicle without a license regarding this incident. His probation in Nebraska was revoked.

The incident on September 16, 1997, also resulted in the revocation of DeWayne's probation in Missouri. On October 24, 1997, DeWayne was sentenced to 2 years' incarceration in Missouri.

While incarcerated in Missouri, DeWayne successfully completed a drug and alcohol treatment program. On February 24, 1998, DeWayne was released on parole by the State of Missouri. DeWayne then returned to Omaha, where he was released on bond awaiting sentencing for the convictions pending in Nebraska. On August 18, 1998, DeWayne was sentenced on the four theft convictions. In total, DeWayne was sentenced to a minimum of 4 years 6 months' incarceration and a maximum of 6 years' incarceration. DeWayne was serving this sentence when the State filed for termination of his parental rights in the present action.

Since February 16, 1996, DeWayne Jr. has remained in the custody of DHHS. According to Jennifer Bivens, DeWayne Jr.'s caseworker, her first direct contact from DeWayne occurred approximately 6 months after DeWayne Jr. was born, when DeWayne telephoned and identified himself as DeWayne Jr.'s father.

The caseworker's second contact with DeWayne was in February 1997, when DeWayne Jr. was approximately 1 year old. DeWayne called Bivens and expressed concerns about establishing paternity and the possibility that he would incur child support obligations for DeWayne Jr. In March 1997, DeWayne again contacted Bivens, asking her to approve his visitation of DeWayne Jr. Later that same month, DeWayne and DeWayne Jr.'s biological mother met with Bivens, informing her they were going to have a second child.

Bivens approved DeWayne's visitation of DeWayne Jr., and her records indicate that DeWayne visited DeWayne Jr. on April 9, 11, and 16, 1997. At some point during this period of time, DeWayne also had his name placed on DeWayne Jr.'s birth certificate, identifying him as the father. DeWayne's visit with DeWayne Jr. on April 16 is the last recorded visit until the summer of 2000.

On December 22, 1997, the biological mother's parental rights to DeWayne Jr. were terminated. During that same month, DHHS instituted proceedings to terminate DeWayne's parental rights. This proceeding resulted in the termination of DeWayne's

parental rights to DeWayne Jr. However, this order was later reversed by the Court of Appeals on February 23, 1999, for reasons unrelated to this appeal. *In re Interest of Dewayne G., Jr.,* No. A-98-697, 1999 WL 111322 (Neb. App. Feb. 23, 1999), *modified* 1999 WL 1338327 (Neb. App. July 27, 1999) (not designated for permanent publication).

Devon, DeWayne's second child with DeWayne Jr.'s biological mother, was born on October 23, 1997, 1 day prior to DeWayne's sentencing in Missouri. Devon was placed in the custody of DHHS on October 24 because, like DeWayne Jr., he was born with cocaine in his system. Bivens also served as Devon's caseworker. The biological mother's parental rights to Devon were subsequently terminated on July 16, 1998. While DeWayne was free on bond between June 3 and August 17, 1998, Bivens granted DeWayne visitation with Devon. DeWayne visited Devon five times during this 10-week period.

On April 19, 2000, DHHS filed a petition to continue temporary custody of DeWayne Jr. and Devon with DHHS and to terminate DeWayne's parental rights to both children. The court granted DHHS' motion for temporary custody on April 19. On April 25, the court held a review and permanency planning hearing concerning DeWayne Jr. and Devon, together with a hearing on the State's motion to continue temporary custody with DHHS and to terminate DeWayne's parental rights. DeWayne was present at the hearing and was represented by counsel.

At the hearing, the court found custody of both children should continue with DHHS, noting that because DeWayne was incarcerated, it would not be in the best interests of the children to place them in the parental home. The court further found that DeWayne's incarceration had prevented reasonable attempts to preserve the family prior to the children's current placement with DHHS. The court also granted DeWayne visitation with the children.

On May 16, 2000, DeWayne filed a motion requesting a hearing, inter alia, on whether the State had made reasonable efforts to reunify the children with DeWayne pursuant to Neb. Rev. Stat. § 43-283.01 (Reissue 1998).

The court held a hearing on May 26, 2000, regarding, among other things, DeWayne's request for a hearing pursuant to

§ 43-283.01. The court found it had addressed the issue of reasonable efforts under § 43-283.01 at the April 25 hearing. The court further found that reasonable efforts to reunify were being made in that visitation had been granted at the April 25 hearing. The court observed that because DeWayne was incarcerated, there were limited options regarding reasonable efforts to reunify. The court also noted that the facts of the case had not changed since the April 25 hearing. For these reasons, the court denied DeWayne's motion requesting a separate hearing pursuant to § 43-283.01.

At the termination hearing in August 2000, Bivens testified that DeWayne has had minimal contact with DeWayne Jr. and Devon over the years. According to her records, DeWayne visited DeWayne Jr. three times in April 1997 and visited Devon five times in the summer of 1998. Bivens also testified that DeWayne Jr. suffers from serious behavioral problems due to fetal alcohol syndrome. Nevertheless, Bivens testified that DeWayne Jr. has been in the same placement for 2½ years and that the placement family is interested in providing permanency for DeWayne Jr. She further testified that Devon has been in the same placement since birth and that the placement family is interested in providing permanency for Devon. Devon has not been diagnosed with any disabilities.

DeWayne testified that he had a strong desire to parent DeWayne Jr. and Devon and had taken parenting and job skills classes while incarcerated. He disputed Bivens' testimony that he had visited DeWayne Jr. only three times while DeWayne Jr. was an infant, asserting that he had regularly gone with the biological mother to visit the child from the time of DeWayne Jr.'s birth until April 1997. DeWayne further testified that the children had visited him three times while he was incarcerated in the summer of 2000 and that the visits had gone very well. According to DeWayne, Devon seemed shy and withdrawn, but DeWayne Jr. had been excited and "really surprised that he did have a father." DeWayne testified that he would be paroled in November 2000 and that his release date was July 2001.

On September 12, 2000, the court granted the State's motion terminating DeWayne's parental rights to DeWayne Jr. and Devon, finding that the State had proved all the grounds alleged

in its petition by clear and convincing evidence and that termination was in the children's best interests. The court noted that "the children in interest cannot and should not be suspended in foster care, and be made to wait for uncertain parental maturity." At the time of the termination proceedings, DeWayne Jr. had been in foster care for approximately 4 years 7 months and Devon had been in foster care for approximately 2 years 11 months.

DeWayne appealed. In *In re Interest of DeWayne G. & Devon G.*, 10 Neb. App. 177, 625 N.W.2d 849 (2001), the Court of Appeals reversed the decision and remanded the cause for further proceedings. The basis for the Court of Appeals' reversal was the failure of the juvenile court to grant DeWayne's motion for a separate hearing pursuant to § 43-283.01.

## ASSIGNMENTS OF ERROR

The State asserts in its petition for further review that the Court of Appeals erred in (1) finding that § 43-283.01 requires that DHHS must prove reasonable efforts have been made to preserve and reunify the family at a separate hearing prior to termination of parental rights; (2) failing to recognize that a hearing was in fact held in DeWayne's case regarding whether reasonable efforts to reunify the family had been made; (3) failing to recognize that reasonable efforts to reunify are not required pursuant to § 43-283.01(4) when the parent of the child has subjected the child to aggravated circumstances, including abandonment; and (4) reversing the termination of DeWayne's parental rights.

## STANDARD OF REVIEW

In an appeal from an order terminating parental rights, an appellate court tries factual questions de novo on the record. Appellate review is independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Clifford M. et al.*, 261 Neb. 862, 626 N.W.2d 549 (2001); *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999).

An order terminating parental rights must be based on clear and convincing evidence. *In re Interest of Clifford M. et*

*al., supra*; *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). A juvenile's best interests are a primary consideration in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code. *In re Interest of Clifford M. et al., supra*; *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999).

■ The interpretation of statutes presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Interest of Dustin H. et al.*, 259 Neb. 166, 608 N.W.2d 580 (2000); *In re Interest of Rachael M. & Sherry M.*, 258 Neb. 250, 603 N.W.2d 10 (1999).

## ANALYSIS

### REASONABLE EFFORTS TO PRESERVE AND REUNIFY

The State argues the Court of Appeals erred in holding that § 43-283.01 entitled DeWayne to a separate hearing to determine whether the State had made reasonable efforts to preserve and reunify the family prior to the termination of his parental rights. Section 43-283.01, enacted in 1998 as part of L.B. 1041, states:

(1) In determining whether reasonable efforts have been made to preserve and reunify the family and in making such reasonable efforts, the juvenile's health and safety are the paramount concern.

(2) Except as provided in subsection (4) of this section, reasonable efforts shall be made to preserve and reunify families prior to the placement of a juvenile in foster care to prevent or eliminate the need for removing the juvenile from the juvenile's home and to make it possible for a juvenile to safely return to the juvenile's home.

(3) If continuation of reasonable efforts to preserve and reunify the family is determined to be inconsistent with the permanency plan determined for the juvenile in accordance with a permanency hearing under section 43-1312, efforts shall be made to place the juvenile in a timely manner in accordance with the permanency plan and to complete whatever steps are necessary to finalize the permanent placement of the juvenile.

(4) Reasonable efforts to preserve and reunify the family are not required if a court of competent jurisdiction has determined that:

(a) The parent of the juvenile has subjected the juvenile to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse;

(b) The parent of the juvenile has (i) committed first or second degree murder to another child of the parent, (ii) committed voluntary manslaughter to another child of the parent, (iii) aided or abetted, attempted, conspired, or solicited to commit murder, or aided or abetted voluntary manslaughter of the juvenile or another child of the parent, or (iv) committed a felony assault which results in serious bodily injury to the juvenile or another minor child of the parent; or

(c) The parental rights of the parent to a sibling of the juvenile have been terminated involuntarily.

(5) If reasonable efforts to preserve and reunify the family are not required because of a court determination made under subsection (4) of this section, a permanency hearing, as provided in section 43-1312, shall be held for the juvenile within thirty days after the determination, reasonable efforts shall be made to place the juvenile in a timely manner in accordance with the permanency plan, and whatever steps are necessary to finalize the permanent placement of the juvenile shall be made.

(6) Reasonable efforts to place a juvenile for adoption or with a guardian may be made concurrently with reasonable efforts to preserve and reunify the family, but priority shall be given to preserving and reunifying the family as provided in this section.

In its opinion, the Court of Appeals defined the issue before it as whether § 43-283.01 mandates a separate hearing wherein the State must prove that it is making reasonable efforts to preserve and reunify the family if a parent requests such a separate hearing pursuant to § 43-283.01. The Court of Appeals then focused upon the language that "reasonable efforts *shall* be made to preserve and reunify families" found in subsection (2) of § 43-283.01.

(Emphasis supplied.) See *In re Interest of DeWayne G. & Devon G.*, 10 Neb. App. 177, 625 N.W.2d 849 (2001).

Based on this "statutory directive" found in § 43-283.01(2), the Court of Appeals held that § 43-283.01 mandates a separate hearing on the issue of reasonable efforts to preserve and reunify under § 43-283.01 whenever the parent has "properly raised" the issue. *In re Interest of DeWayne G. & Devon G.*, 10 Neb. App. at 183, 625 N.W.2d at 853. Accordingly, the Court of Appeals held that "DeWayne was entitled to a hearing on whether reasonable efforts have been made to preserve and reunify the family and allow for the safe return of the children to the home." *Id.* at 184, 625 N.W.2d at 854. Because the juvenile court denied DeWayne's request for a separate hearing on the issue of reasonable efforts to preserve and reunify, the Court of Appeals reversed the termination of DeWayne's parental rights and remanded the cause for further proceedings.

 This issue presents a question of statutory interpretation. In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *In re Interest of Aaron K.*, 250 Neb. 489, 550 N.W.2d 13 (1996). See, also, *In re Interest of Lisa O.*, 248 Neb. 865, 540 N.W.2d 109 (1995). Moreover, statutes pertaining to the same subject matter are to be construed together as if they were one law and effect given to every provision. *Id.* The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed in pari materia to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Id.* See, also, *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *In re Guardianship & Conservatorship of Garcia*, 262 Neb. 205, 631 N.W.2d 464 (2001); *Mulinix v. Roberts*, 261 Neb. 800, 626 N.W.2d 220 (2001).

 In its opinion, the Court of Appeals held that § 43-283.01 requires a separate hearing on reasonable efforts if requested by

the parent. However, the plain language of § 43-283.01 contains no such directive granting a parent or any other party the right to bring a motion requesting a "separate hearing" on the issue of reasonable efforts to preserve and reunify.

Considering § 43-283.01 in accordance with the plain language of other statutory provisions of the juvenile code, it is clear the Legislature did not intend for § 43-283.01 to grant a party the right to a separate layer of "reasonable efforts" hearings. When § 43-283.01 was adopted, the Legislature at the same time amended selected statutes in the juvenile code to indicate the specific stages within juvenile proceedings during which the juvenile court must consider reasonable efforts to preserve and reunify families pursuant to § 43-283.01.

In particular, the Legislature amended Neb. Rev. Stat. § 43-284 (Reissue 1998), to require that when a juvenile is removed from his or her home based upon Neb. Rev. Stat. § 43-247(3) or (4) (Reissue 1998), the court must make a "written determination" that, among other things, "reasonable efforts to preserve and reunify the family have been made if required under § 43-283.01." Similarly, Neb. Rev. Stat. § 43-254 (Reissue 1998) was amended to state that once a juvenile has been temporarily removed from his or her home, orders continuing such out-of-home placement require the court to make a "written determination" that "reasonable efforts were made to preserve and reunify the family if required under subsections (1) through (4) of section 43-283.01." The Legislature also amended Neb. Rev. Stat. § 43-1315 (Reissue 1998) regarding status and permanency planning reviews. Section 43-1315 states that when ordering a child to continue in placement outside the home, the court must make, among other things, a "written determination" that "reasonable efforts to preserve and reunify the family, if required under section 43-283.01, have been made."

Finally, regarding the termination of parental rights pursuant to § 43-292, the Legislature incorporated § 43-283.01 into only § 43-292(6). Subsection (6) now states that parental rights can be terminated when, "Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have

failed to correct the conditions leading to the determination." Section 43-283.01 is not incorporated into any of the other grounds for seeking termination of parental rights.

We additionally note that the plain language of §§ 43-284, 43-254, 43-1315, and 43-292(6), as amended by the Legislature in 1998, recognizes that determinations regarding reasonable efforts are necessary only "if required" under § 43-283.01. Section 43-283.01 limits situations in which the State is required to provide reasonable efforts to preserve and reunify, by completely eliminating any such requirement in those situations contemplated under § 43-283.01(4)(a), (b), and (c).

█ Construing this statutory framework in pari materia, we determine that the issue of reasonable efforts if required under § 43-283.01 must be reviewed by the juvenile court (1) when removing from the home a juvenile adjudged to be under subsections (3) or (4) of § 43-247 pursuant to § 43-284, (2) when the court continues a juvenile's out-of-home placement pending adjudication pursuant to § 43-254, (3) when the court reviews a juvenile's status and permanency planning pursuant to § 43-1315, and (4) when termination of parental rights to a juvenile is sought by the State under § 43-292(6).

We recognize that the Court of Appeals' interpretation of § 43-283.01 was further premised on its observation that "[p]rior to the enactment of § 43-283.01, there was no provision in the juvenile code which mandated reasonable efforts to preserve and reunify the family." *In re Interest of DeWayne G. & Devon G.*, 10 Neb. App. 177, 180, 625 N.W.2d 849, 852 (2001). However, reasonable efforts to reunify the family have been an integral part of the juvenile code since 1981. See 1981 Neb. Laws, L.B. 346. As enacted in 1981 and operative July 1, 1982, Neb. Rev. Stat. § 43-246 (Reissue 1984) stated that "sections 43-245 to 43-2,129 *shall* be construed . . . to assure every reasonable effort possible to reunite the juvenile and his or her family." (Emphasis supplied.) The State has often gone to considerable efforts to attempt to achieve reunification. See, e.g., *In re Interest of S.R., D.R., and B.R.*, 239 Neb. 871, 479 N.W.2d 126 (1992).

The changes wrought in 1998 by L.B. 1041, as stated by its introducer, State Senator Gerald E. Matzke, were intended to "[change] the emphasis under our law from reunification of the

family . . . to the primary criteria of the health and safety of the child." Floor Debate, L.B. 1041, 95th Leg., 2d Sess. 11548 (February 12, 1998). This change was mandated by the federal passage of the Adopted and Safe Families Act of 1997. As State Senator Matzke further observed, the 1998 changes to the Nebraska Juvenile Code were intended to help resolve the problem of "children being left too long in foster care, often for many years." *Id.* at 11548.

We determine that the plain language of § 43-283.01, construed in pari materia with other related portions of the juvenile code, does not support the Court of Appeals' determination that § 43-283.01 provided DeWayne with a right to a separate hearing on the issue of reasonable efforts to preserve and reunify the family. DeWayne's motion for a hearing under § 43-283.01 did not occur in the context of proceedings under §§ 43-284, 43-254, 43-1315, or 43-292(6). Instead, DeWayne's motion was filed in conjunction with a pending termination proceeding under § 43-292(1), (2), (4), and (7). His motion thus fell outside the procedural framework of § 43-283.01.

Given our determination that DeWayne was not entitled to a separate independent hearing under § 43-283.01, it is unnecessary to reach the State's second and third assignments of error.

TERMINATION

The State asserts in its fourth assignment of error that the Court of Appeals erred in reversing the termination of DeWayne's parental rights. While the Court of Appeals did not reach the merits of the order terminating DeWayne's parental rights, it is an established rule that upon granting further review which results in the reversal of a decision of the Court of Appeals, this court may consider, as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach. See, *Folgers Architects v. Kerns*, 262 Neb. 530, 633 N.W.2d 114 (2001); *Lange v. Crouse Cartage Co.*, 253 Neb. 718, 572 N.W.2d 351 (1998).

In order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Clifford M. et al.*, 261 Neb. 862, 626 N.W.2d 549 (2001). Our de novo review of the record

shows the State has proved by clear and convincing evidence that both children have been in out-of-home placement for 15 or more months of the last 22 months. Having determined the statutory ground enumerated in § 43-292(7) has been proved, we do not consider issues relating to the sufficiency of the evidence concerning the other statutory provisions identified by the trial court as grounds for termination. See *In re Interest of Lisa W. & Samantha W.*, 258 Neb. 914, 606 N.W.2d 804 (2000).

The only remaining issue is whether terminating DeWayne's parental rights is in the children's best interests. We have held that where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.*; *In re Interest of Sunshine A.*, 258 Neb. 148, 602 N.W.2d 452 (1999).

Our de novo review of the record shows that after DeWayne Jr. was born, DeWayne did not acknowledge to Bivens or the court that he was DeWayne Jr.'s father until the child was over 6 months old. When DeWayne attended DeWayne Jr.'s dispositional hearing on April 30, 1996, he identified himself merely as a friend of the family. For the first year and 7 months of DeWayne Jr.'s life, when DeWayne was not incarcerated, he had little contact with DeWayne Jr. There were only three recorded visits by DeWayne during this time period, although he claims he visited more frequently than the record indicates. While our review is de novo, we do give weight to the fact that the juvenile court observed the witnesses and accepted Bivens' version of the facts over DeWayne's. See *In re Interest of Clifford M. et al., supra.* Our review of the record shows that while DeWayne was not incarcerated, he made no effort to parent DeWayne Jr., provide a home for him, or provide for him financially.

The record further shows that DeWayne knowingly and deliberately violated his probation. He knew he was on probation for five separate felony convictions and knew the consequence of his actions, if discovered, would lead to revocation of his probation. DeWayne also knew that DeWayne Jr.'s biological mother was expecting another child fathered by DeWayne when he

violated his probation. DeWayne's deliberate probation violation placed him in a position where he was unable to parent DeWayne Jr. or Devon, and could not provide for any of their needs. We have previously noted that in a case involving termination of parental rights, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration. *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999). Furthermore, "While incarceration alone is not a basis for termination of parental rights [DeWayne's] incarceration has contributed to the neglect of [his] children." See *In re Interest of Joshua M. et al.*, 256 Neb. 596, 613, 591 N.W.2d 557, 568 (1999).

As we noted in *In re Interest of L.V.*, 240 Neb. 404, 418, 482 N.W.2d 250, 259-60 (1992):

"Incarceration of a parent, standing alone, does not furnish a ground for automatic termination of parental rights. . . . Incarceration, however, does not insulate an inmate from the termination of his parental rights if the record contains the clear and convincing evidence that would support the termination of the rights of any other parent."

Quoting *In re Randy Scott B.*, 511 A.2d 450 (Me. 1986).

DeWayne has not parented DeWayne Jr. or Devon at any time since their births. DeWayne Jr. and Devon have languished in foster care for years as a result of DeWayne's actions. At the time of the termination proceedings, DeWayne Jr. had been in foster care for approximately 4 years 7 months and Devon had been in foster care for approximately 2 years 11 months. It is worth repeating our statement from *In re Interest of Sunshine A.*, 258 Neb. at 158, 602 N.W.2d at 460, that the "concept of permanency is not simply a 'buzzword.'"

In our de novo review of the record, we find that it is in the children's best interests that DeWayne's parental rights be terminated.

## CONCLUSION

Based on the foregoing reasons, we reverse the decision of the Court of Appeals and remand the cause with directions that the Court of Appeals affirm the decision of the juvenile court terminating DeWayne's parental rights.

REVERSED AND REMANDED WITH DIRECTIONS.