IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF ELI S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ELI S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
TAMMY S., APPELLANT.

Filed December 3, 2013.    No. A-13-331.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge.
Affirmed.

Brittani Lewit and Mark T. Bestul, of Legal Aid of Nebraska, for appellant.

Alicia B. Henderson, Chief Deputy Lancaster County Attorney, Maureen Lamski, and Amy Clemens, Senior Certified Law Student, for appellee.

Julianne M. Spatz, guardian ad litem.

IRWIN, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

INTRODUCTION

Tammy S. appeals from an order of the juvenile court for Lancaster County terminating her parental rights to her minor child, Eli S. Tammy challenges the statutory ground for termination, as well as the juvenile court's finding that termination of her parental rights is in the child's best interests. Based on our de novo review of the record, we affirm the juvenile court's order.

BACKGROUND

Tammy and Daniel B. are the parents of Eli, born in August 2012. On August 29, the State filed a second amended petition which included a request to adjudicate Eli, a motion to

terminate Tammy's parental rights, and a motion requesting the court to find that reasonable efforts to reunify were not required. The petition alleged that Tammy has other children, Jay S. and Paige B., who were previously adjudicated and placed outside of her home; a plan to correct the issues that led to the adjudication was developed and adopted by the court; Tammy failed to correct the conditions that led to the adjudications of Paige and Jay; and an order was entered terminating Tammy's parental rights to Paige and Jay. The petition further alleged that Tammy had failed to correct the issues that led to the original adjudication and termination of her parental rights to Paige and Jay, thereby placing Eli at risk of harm.

In regard to the motion to terminate, the second amended petition alleged that Tammy had substantially and continuously or repeatedly neglected one or more siblings of Eli and refused to give them necessary parental care and protection. It further alleged that termination of Tammy's parental rights was in Eli's best interests.

The State also filed an ex parte motion requesting that the Nebraska Department of Health and Human Services (the Department) be given emergency custody of Eli. The juvenile court granted the motion and placed Eli in the temporary custody of the Department. At the time of trial, he remained in the Department's custody.

Tammy's parental rights to Jay and Paige were terminated in March 2011 based on Tammy's failure to take steps to protect her children from threats and domestic violence from Daniel, which caused physical injury to Tammy and which at times occurred in Jay's and Paige's presence. Daniel is Paige's biological father, but he is not Jay's father. The juvenile court terminated Tammy's rights to Jay and Paige based on Neb. Rev. Stat. § 43-292(2), (6), and (7) (Cum. Supp. 2012) and a finding that termination was in their best interests. This court upheld the termination of Tammy's parental rights to Jay and Paige. See *In re Interest of Jay S. & Paige B.*, No. A-11-282, 2011 WL 5433695 (Neb. App. Nov. 8, 2011) (selected for posting to court Web site).

From the beginning to the end of the case involving Jay and Paige, Tammy consistently denied any physical abuse by Daniel, despite evidence to the contrary. She also maintained this position despite Jay's therapist testifying that Jay told him he had witnessed domestic violence. Jay's therapist also testified that Jay's defiance issues, aggressive behaviors, and anger problems are consistent with someone who has been exposed to multiple incidents of domestic violence. Tammy was aware that Daniel had a history of assaultive behavior toward individuals in addition to Tammy. His behavior included assaulting his 14-year-old sister. Although Tammy claimed at the termination trial regarding Jay and Paige that the romantic relationship with Daniel had ended, she testified that they were still friends and that the breakup occurred because Daniel was unfaithful to her, not because of his behavior or because she recognized that he was a risk to her children. The juvenile court stated in the prior termination order that the problem has always been that Tammy does not recognize that Daniel is a danger to herself and her children.

On October 12, 2012, the court ordered that the Department was not required to make reasonable efforts to preserve and reunify Tammy and Eli pursuant to Neb. Rev. Stat. § 43-283.01(4)(c) (Cum. Supp. 2012), because Tammy had previously had her parental rights terminated involuntarily to a sibling of Eli's.

Trial was held on February 26 and March 29, 2013, on the second amended petition to adjudicate and motion for termination. A copy of all the court filings in the case involving Jay

and Paige was entered into evidence. A copy of the juvenile court's order terminating Tammy's parental rights to Jay and Paige, and a copy of this court's opinion affirming the juvenile court's order, were also entered into evidence.

David Bruno, an initial assessment worker with the Department, testified that Daniel was present at the hospital with Tammy when he went to inform Tammy that a temporary custody order for Eli had been entered. Daniel was also present when Eli was born.

Bruno testified that he conducted an initial assessment with Tammy in September 2012. Tammy told Bruno that she and Daniel are friends and that they talk on the telephone. She also told him that Daniel may have stayed a weekend with her, but that they were not living together. Tammy denied any sexual encounters with Daniel since Eli was conceived.

Tammy indicated to Bruno that she believes Daniel is a completely different person than he was in the past and that people often misunderstand him because he can be very loud and intimidating. She continued to maintain that Daniel never physically assaulted or verbally threatened her.

Bruno testified that there was no indication of domestic abuse between Tammy and Daniel since the termination trial involving Jay and Paige. Bruno testified that there were reports that Daniel was involved in instances of domestic violence with other women between 2010 and 2012. However, the Department was unable to conduct a further investigation of these reports because Daniel refused to participate in the initial assessment with Bruno. Bruno did have several telephone conversations with Daniel. Bruno asked him if he had done anything to change his lifestyle since the termination involving Jay and Paige. Daniel responded that he did not need to change anything about himself, that "he was perfect the way he was."

Bruno testified that in June 2011, Daniel had participated in an initial assessment with respect to another juvenile case. In that assessment, Daniel indicated to Bruno that he uses marijuana on a daily basis and that he does not see anything wrong with using marijuana. He indicated he has never sought treatment for his frequent use of marijuana and does not feel he needs any treatment. Daniel also told Bruno at the time of the June 2011 assessment that he has never been the perpetrator of any domestic violence and specifically denied any domestic violence against Tammy. Bruno also asked Daniel about his lengthy criminal history, and Daniel denied committing any of the crimes, claiming that he was wrongfully convicted.

Lauren Hiller, the caseworker assigned after Bruno concluded the initial assessment in September 2012, testified as to why Jay and Paige's case is relevant to Eli's case. She testified that there were safety concerns involving Daniel in Jay and Paige's case. She testified that there was no evidence of any change in the conditions that led to Jay and Paige's adjudication, thereby resulting in the same safety concerns for Eli. Hiller also testified that Tammy's continued denial of being the victim of domestic violence perpetrated by Daniel was also a safety concern for Eli. She explained that if Eli was placed in Tammy's care, he would be put in the same situation as Jay and Paige had been. Hiller was aware that Jay had behavioral and cognitive problems as a result of being exposed to domestic violence.

Hiller testified that it would be in Eli's best interests to terminate Tammy's parental rights. Her opinion was based on Tammy's history with her other children and the fact that the services offered in Jay and Paige's case were unsuccessful and any services offered in the present case would be the same services offered again. She testified that Tammy continues to

deny being the victim of domestic violence and Daniel continues to deny being the perpetrator of domestic violence and that therefore, the problem cannot be addressed until the parents acknowledge the problem. Hiller testified that she did not see any change in Tammy's circumstances since the termination of her rights to Jay and Paige.

Tammy testified that she has known Daniel since 1999 and had a romantic relationship with him between 2003 and 2010. She stated that after their romantic relationship ended in 2010, she had one intimate encounter with Daniel in approximately November 2011, resulting in her pregnancy with Eli. She has not lived with Daniel since May 2009. She testified that she and Daniel continue to be friends and always will be. She testified that she talks to him on the telephone once or twice per week. Tammy stated that she often talks to Daniel when she is upset about losing her children. She admitted that she uses Daniel as a support system when she is feeling down or needs comfort.

When asked if Daniel has been abusive to her in the past, Tammy responded that she and Daniel have maybe been verbally abusive to each other, but that it has never been physical. Tammy stated that she does not believe Daniel poses any danger to Eli because she has never seen him mistreat a child. She further testified that she does not see Daniel as being a danger to any of her children and praised Daniel for helping parent Jay, who is not his biological child. She stated that "[Daniel] always put the kids' needs in front of him[self]. . . . He provided a . . . safe home."

Tammy testified that there have been no instances of abuse or domestic violence with Daniel or with anyone else between March 2011, when her rights to Paige and Jay were terminated, and the termination trial at issue.

She stated that if Eli were returned to her, she would want Daniel to be in his life, but that there are issues that he needs to work on, like his temper. She then went on to say that everyone has a temper, including herself, and that Daniel's has never gotten out of control to where it hurt the children.

Daniel testified that his relationship with Tammy at the time of trial was the same as it has always been since he first met her--she is a friend and someone he can talk to. He testified that having Jay and Paige taken away has brought them closer together. Daniel also stated that if Eli had not been removed from Tammy's care, he would be living with Tammy and Eli. When asked when his last sexual encounter with Tammy had been, he stated that he wished it had been recently and was hoping it would be soon.

Daniel testified that he does not have a substance abuse problem. He also testified that he attended a substance abuse class at some point after March 2011 as a result of being charged with possession of marijuana. He testified that he had recently been charged with marijuana possession again and was going to repeat the substance abuse class so he could keep his driver's license. He testified that he has not gone to any therapy and has not gone to any batterer's intervention courses since the prior termination. He admitted to using physical violence against a woman one time, about 15 years before trial. He testified, however, that he only swung at the woman and did not strike her.

The evidence also showed that since October 2012, Tammy had been letting Daniel drive a car that she initially purchased in 2008 for Jay and Daniel to work on and fix up together. Daniel began driving Tammy's car when his car broke down and he needed a vehicle. Tammy

was not using the car she bought for Jay, because she had another car she drove. Tammy had been registering and insuring the car bought for Jay since 2010. Tammy and Daniel both testified that the insurance for the car is still in Tammy's name, but that Daniel pays for it, if he has the money to do so. Tammy testified that Daniel is going to buy the car from her for $300, but believes she could sell it to someone else for more money.

There was also evidence that in February 2012, Tammy was invited by Jay's foster parents to meet them for a visit with Jay on his birthday. Tammy contacted Daniel and told him she was going to see Jay, including when and where she was meeting him. As a result, Daniel showed up at the location of the visit.

Following trial, the juvenile court entered an order adjudicating Eli and terminating Tammy's parental rights. The court found that grounds for termination pursuant to § 43-292(2) existed and that terminating Tammy's parental rights was in Eli's best interests.

## ASSIGNMENTS OF ERROR

Tammy assigns the juvenile court erred in (1) finding that grounds for termination existed under § 43-292(2) and (2) finding that terminating her parental rights was in Eli's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Candice H.*, 284 Neb. 935, 824 N.W.2d 34 (2012).

## ANALYSIS

*Statutory Grounds.*

The juvenile court found that the State proved grounds for termination of Tammy's parental rights to Eli under § 43-292(2). In order to terminate an individual's parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *In re Interest of Leland B.*, 19 Neb. App. 17, 797 N.W.2d 282 (2011).

Tammy assigns that the juvenile court erred in finding that grounds to terminate existed under § 43-292(2), because it relied entirely on facts from the previous case involving Jay and Paige and it failed to consider her present circumstances. Under § 43-292(2), grounds for termination exist when the parent has "substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection." Tammy argues that § 43-292(2) should not be interpreted to allow the State to terminate parental rights based solely upon a finding that a parent has previously neglected and refused to care for a sibling.

The Supreme Court previously addressed this same argument in *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010). In that case, the mother argued that § 43-292(2) was unconstitutional because it allowed the State to terminate parental rights based solely upon a finding that a parent has previously neglected and refused to care for a sibling. The

Supreme Court determined that the mother misunderstood § 43-292(2) and rejected her argument:

> By its terms, § 43-292 requires a showing of best interests plus 1 of the 11 statutory bases for termination. See *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). Section 43-292(2) involves the neglect of the child or a sibling of the child at issue. [Section] 43-292(2) does not dictate that whenever a parent has neglected a sibling in the past, parental rights to any future children will automatically be terminated without giving the parent an opportunity to present evidence of current circumstances. Instead, the statute as a whole states that prior neglect can be a basis for termination only in conjunction with proof by the State which establishes that termination is in the best interests of the minor children involved in the current proceedings. Indeed, as we have emphasized, and we take this opportunity to repeat, a juvenile's best interests are a primary consideration in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code. *In re Interest of DeWayne G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

*In re Interest of Sir Messiah T. et al.*, 279 Neb. at 907, 782 N.W.2d at 327.

In summary, the court in *In re Interest of Sir Messiah T. et al., supra*, held that contrary to the parent's understanding of § 43-292(2), this subsection does not allow a juvenile court to terminate parental rights based solely on the parent's past neglect of a sibling. Proof of best interests is also required before termination can occur.

Therefore, in the present case, the juvenile court had to determine whether the State proved by clear and convincing evidence that the statutory ground set forth in subsection (2) of § 43-292 existed. This required the State to show that Tammy had neglected Eli or a sibling of Eli's in the past. At trial, the State presented sufficient evidence to show that Tammy's parental rights to Jay and Paige were terminated by reason of neglect. Accordingly, we conclude that there was clear and convincing evidence to warrant a finding that grounds for termination pursuant to § 43-292(2) existed. The juvenile court did not err in making this finding.

*Best Interests.*

Because the State met its burden with respect to neglect under § 43-292(2), we next consider whether the State established by clear and convincing evidence that termination was in Eli's best interests. In deciding best interests, the court is obligated to review the evidence presented by all parties relative to the parent's current circumstances and determine if termination is in the best interests of the minor children based on those circumstances. *In re Interest of Sir Messiah T. et al., supra.*

Tammy argues that she has improved her circumstances since the termination of her rights to Jay and Paige and that her current circumstances show that it is not in Eli's best interests to terminate her parental rights. She contends that she has removed the threat to Eli's safety as evidenced by no incidents of domestic violence since 2011; no romantic relationship with Daniel since 2009; and her willingness to do whatever it takes to prevent losing her parenting rights, including protecting Eli from Daniel.

Tammy contends that she has removed the threat to Eli's safety for the reasons set forth above. However, Tammy continues to maintain a relationship with Daniel. She has made this

choice despite the fact that her parental rights to Jay and Paige were terminated and Eli was removed from her care as a result of her relationship with Daniel. Jay and Paige were removed from Tammy's care based on the domestic abuse between Tammy and Daniel and Tammy's failure to protect her children. After their removal, Tammy would not admit to any physical abuse by Daniel and refused to keep her children safe from Daniel. As a result, Tammy's rights to Jay and Paige were terminated.

Following the termination of her rights to Jay and Paige in March 2011, Tammy continued to have a relationship with Daniel and had at least one sexual encounter with him, resulting in her pregnancy with Eli. Eli was born in August 2012, about 17 months after Tammy's rights to Jay and Paige were terminated. Eli was removed from Tammy's care 1 day after his birth, based on the prior termination and her continued involvement with Daniel. After Eli was removed, Tammy still did not distance herself from Daniel. Rather, she testified that she and Daniel continue to be friends and always will be. She talks to him on a weekly basis, and even uses him as a support system when she is depressed and needs someone to talk to. She also gave him a car to drive when his broke down. At the time of trial, Tammy was still insuring the car and she had plans to sell it to Daniel.

Although Tammy claims that she and Daniel are no longer romantically involved, there is ample evidence that Daniel is still involved in Tammy's life on a regular basis, thereby resulting in the same safety concerns for Eli that existed for Jay and Paige.

The evidence at trial also showed that Tammy continues to deny any physical abuse by Daniel. Tammy testified that she does not believe Daniel poses any danger to Eli or that he has ever been a danger to any of her children. She even praised Daniel for parenting Jay, because he was not Daniel's biological child, and testified that Daniel provided a safe home. She says she would protect Eli from Daniel if she had custody, yet as previously stated, she does not believe Daniel is a danger to Eli. She does not recognize or understand the problem that Daniel posed to Jay and Paige and is therefore unable to protect Eli from the same danger.

Tammy also told Bruno that Daniel is a completely different person since the termination of her parental rights to Jay and Paige. Again, she makes this statement while continuing to deny any physical abuse. The evidence shows that Daniel has not changed. Daniel continues to deny any physical abuse to Tammy and indicated that he does not need to change anything about himself. He has not attended any therapy sessions and has not attended any batterer's intervention courses. He also admits to regular marijuana use, which he does not see as a substance abuse issue.

Although Tammy claims that her circumstances have changed since the termination of her parental rights to Jay and Paige, there is little evidence to support that claim. Tammy's parental rights to Jay and Paige were terminated based on Tammy's refusal to admit to domestic abuse by Daniel and her failure to protect her children from Daniel. In the present case, Tammy continues to deny any physical abuse by Daniel and continues to have a relationship with Daniel. Tammy has failed to address the issues that were unresolved at the time of the prior termination. She is essentially in the same position as she was at the time of the last termination trial. We conclude the State provided clear and convincing evidence that terminating Tammy's parental rights was in Eli's best interests.

## CONCLUSION

Based on our de novo review of the record, we conclude that the juvenile court did not err in terminating Tammy's parental rights to Eli. The order of the juvenile court terminating Tammy's parental rights is affirmed.

AFFIRMED.