IN RE INTEREST OF BRITTANY S., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
WILLIAM F., APPELLANT.
670 N.W.2d 465

Filed October 21, 2003.   No. A-02-1396.

Thomas K. Harmon, of Respeliers & Harmon, P.C., for appellant.

James S. Jansen, Douglas County Attorney, and Kim B. Hawekotte for appellee.

Kimberley Taylor Riley, guardian ad litem for appellant.

IRWIN, Chief Judge, and SIEVERS and MOORE, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

William F. appeals the decision of the separate juvenile court of Douglas County terminating his parental rights as to his daughter, Brittany S., pursuant to Neb. Rev. Stat. § 43-292(5) and (7) (Reissue 1998), and finding that such termination is in the best interests of Brittany. William alleges that the juvenile court erred (1) by not requiring the State to provide him with a reasonable plan of rehabilitation before terminating his parental rights and (2) in determining that termination of his parental rights is in the best interests of Brittany. We find that William was not entitled to have the State provide a reasonable plan of rehabilitation before terminating his parental rights under § 43-292(7) and that termination of William's parental rights is in the best interests of Brittany. In light of these findings, no review of the juvenile court's ruling with regard to § 43-292(5) is required.

The court-appointed guardian ad litem (GAL) for William also submits arguments on appeal, which arguments we conclude do not have merit. Accordingly, we affirm the decision of the juvenile court.

## II. BACKGROUND

This case comes before us for the second time; the first time it was disposed of in an unpublished opinion, *In re Interest of Brittany S.*, No. A-00-1170, 2001 WL 1091141 (Neb. App. Sept.

4, 2001) (not designated for permanent publication) (*Brittany I*). A detailed description of the facts is contained therein. We will discuss only the facts necessary to dispose of the case now before us.

This court affirmed the juvenile court's previous adjudication of Brittany as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998). *Brittany I.* Subsequently, the Douglas County Attorney's office filed a motion to terminate William's parental rights on April 3, 2002.

William's GAL moved to have a special prosecutor appointed. William's GAL argued that the Douglas County Attorney's office had a conflict of interest because Brittany's former GAL, who had terminated her employment with Nebraska Legal Services and thus her representation of Brittany, began working in the Douglas County Attorney's office in the juvenile division. Further, in the course of her representation of Brittany, the former GAL had hired an attorney and filed a personal injury lawsuit against William on Brittany's behalf. The district court for Douglas County entered a default judgment against William in the personal injury lawsuit. William's GAL asserted that the default judgment against him constituted a legal interest in a civil action, thus creating the appearance of impropriety by the Douglas County Attorney's office and warranting the appointment of a special prosecutor. The juvenile court denied the motion for a special prosecutor.

The hearing on the State's motion to terminate William's parental rights with regard to Brittany occurred on October 31, 2002. The State first presented evidence of William's prior conviction in 1996 of first degree sexual assault on a child. In addition, the State presented the testimony of several experts involved in the case.

Dr. Glenda Lucille Cottam testified as an expert witness on behalf of the State regarding the psychological assessment she conducted on William. Dr. Cottam expressed numerous concerns regarding William. Dr. Cottam testified that William told her he had been convicted of two previous "assault" charges and that he was a registered sex offender. Dr. Cottam's evaluation report indicates William stated that the two assault charges were both sexual in nature, that he " 'plea bargained' " and the charges were

dropped in one case, and that he was convicted and served jail time in the other case.

Dr. Cottam testified that William indicated he became sexually active at the age of 6 or 7. Dr. Cottam testified that she was concerned about this fact because sexual intercourse at such a young age would cause confusion about appropriateness of behavior and boundaries. Dr. Cottam also testified that she was concerned as to how a child of that age learned to be sexually active and from where the exposure came.

Dr. Cottam testified that she was concerned with William's mental health. She diagnosed William with serious to major depression, mild mental retardation, and possibly an organic personality disorder. Dr. Cottam expressed concern with William's ability to parent children and with his lack of necessary skills and abilities to be a primary parent to a child. Dr. Cottam recognized that while William's depression may be treatable, his overall prognosis showed little hope for much improvement.

Mary Ellen Christ-Anderson, Brittany's therapist, also testified on behalf of the State. Christ-Anderson testified that Brittany was referred to her to work toward some kind of resolution regarding sexual abuse issues. Christ-Anderson testified that at age 2, Brittany was an aggressive and angry child. She was unusually hypervigilant and displayed what her therapist described as a flattened, void, expressionless facial appearance. Brittany exhibited a poor understanding of boundaries, inappropriate touching, and sexual talk and behavior. Christ-Anderson testified that Brittany's behaviors were unusual for a 2- or 3-year-old and that Brittany openly talked about sexual material. Christ-Anderson testified that Brittany's foster parents had also reported disturbing behavior by Brittany.

According to Christ-Anderson, Brittany "clearly identified" William as her source of anger early on in her therapy sessions. Christ-Anderson diagnosed Brittany with posttraumatic stress syndrome, as well as a possible attachment disorder. Brittany had experienced nightmares, "psychic numbing," and hypervigilance; Brittany also had physical symptoms of sexual abuse, such as venereal warts which had to be surgically removed.

Christ-Anderson testified that after 2½ years of therapy, Brittany had showed improvement with regard to her hypervigilance and

some progression toward improvement with regard to her aggression. She also testified that Brittany's anger and aggression were directed at "Billy," referring to William. In addition, Brittany showed some improvement with regard to her inappropriate touching, sexual acting out, and sexual talk.

Finally, Joseph Schoettle, Brittany's caseworker from Child Protective Services of the Nebraska Department of Health and Human Services (Department), testified on behalf of the State. Schoettle testified that Brittany had been in the Department's custody and care continuously since December 29, 1999. Schoettle also testified that he had prepared a court report on January 3, 2002, which recommended William undergo a psychological evaluation with an emphasis on sexual perpetration, which evaluation William did complete. The report also recommended that William (1) provide the Department with releases and information regarding his past evaluation and treatment as a sexual offender; (2) maintain a stable income and safe, adequate, and independent housing for himself and his child; and (3) provide his case manager with monthly verification of fulfilling the housing requirement. The record does not reveal William's compliance or noncompliance with those recommendations. Schoettle also testified that he recommended William have no visitation or contact with Brittany because the allegations against William regarding Brittany had not been addressed and because the Department did not feel it would be safe for William to have contact with Brittany.

Following the hearing, the juvenile court terminated William's parental rights with regard to Brittany. The court determined that the State had proven by clear and convincing evidence that (1) Brittany is a child within the meaning of § 43-247(3)(a) insofar as William was concerned; (2) William was ordered to comply with various plans of rehabilitation; (3) Brittany came within the meaning of § 43-292(5) because William is unable to discharge his parental responsibilities due to mental illness or deficiency, which condition is reasonably expected to continue for a prolonged indeterminate period; (4) Brittany came within the meaning of § 43-292(7) because she has been in an out-of-home placement for 15 or more of the most recent 22 months; and (5) termination of William's parental rights is in the best interests of

Brittany. William now appeals the court's order terminating his parental rights.

## III. ASSIGNMENTS OF ERROR

William alleges, restated and renumbered, that the juvenile court erred in terminating his parental rights by (1) failing to require the State to provide William with a reasonable plan of rehabilitation to address his mental illness, (2) failing to require the State to provide William with a reasonable plan of rehabilitation so as to have allowed him to prevent the out-of-home placement of Brittany for 15 or more of the most recent 22 months, and (3) incorrectly finding that termination of William's parental rights is in the best interests of Brittany.

William's GAL also filed a brief in this appeal and alleges that the juvenile court erred (1) in not requiring the State to prove by clear and convincing evidence that William is the biological father of Brittany and (2) in not appointing a special prosecutor.

## IV. STANDARD OF REVIEW

In an appeal from an order terminating parental rights, an appellate court tries factual questions de novo on the record. Appellate review is independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003); *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's ruling. *In re Interest of Ty M. & Devon M., supra*; *In re Interest of Chad S.*, 263 Neb. 184, 639 N.W.2d 84 (2002).

## V. ANALYSIS

Under § 43-292, the juvenile court may terminate an individual's parental rights if one of the grounds enumerated in that statute exists and if the termination is found to be in the child's best interests. In the case at bar, the juvenile court terminated

William's parental rights on the basis of the following grounds set forth in § 43-292:

> (5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period; [and]

> (7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months.

The juvenile court also found that terminating William's parental rights is in the best interests of Brittany.

### 1. TERMINATION OF PARENTAL RIGHTS
### UNDER § 43-292(5) AND (7)

William argues that the juvenile court erred in finding that Brittany had been in an out-of-home placement for 15 or more of the most recent 22 months due to the fault of William. Specifically, William argues that the State had a statutory duty to exercise diligent efforts to strengthen the parent-child relationship of William and Brittany, but had failed to provide him with an opportunity to participate in a plan of rehabilitation. This argument is not convincing.

Termination of parental rights on the basis of § 43-292(7) does not require the State to provide a plan of rehabilitation. The Nebraska Supreme Court has made it clear that the requirement to provide reasonable efforts to reunify families as delineated in Neb. Rev. Stat. § 43-283.01 (Reissue 1998) is incorporated into § 43-292 only in subsection (6). See, *In re Interest of DeWayne G. & Devon G., supra*; *In re Interest of Andrew M. et al.*, 11 Neb. App. 80, 643 N.W.2d 401 (2002).

In this case, the juvenile court terminated William's parental rights on the basis of § 43-292(5) and (7). Accordingly, the State had no obligation to provide William with an opportunity to participate in a plan of rehabilitation. Although the juvenile court found that William had been ordered to comply with various plans of rehabilitation, such a finding was unnecessary, and we therefore need not determine whether it was correct.

Furthermore, it is undisputed that Brittany has been in an out-of-home placement and continuously in the care, custody, and

control of the Department since December 29, 1999. The State has proven by clear and convincing evidence that the child falls within the scope of § 43-292(7). Therefore, termination of William's parental rights on the basis of § 43-292(7) was not error.

William also argues that the juvenile court erred in finding that William is unable to discharge his parental duties due to mental illness or deficiency, because the State failed to provide William with a plan of rehabilitation to address mental health issues. Because § 43-292 requires a finding of only one of the enumerated grounds to terminate parental rights and because we find the statutory ground under § 43-292(7) was proven by clear and convincing evidence, we do not consider William's arguments with regard to the juvenile court's determination under § 43-292(5). See, *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002); *In re Interest of Lisa W. & Samantha W.*, 258 Neb. 914, 606 N.W.2d 804 (2000).

## 2. BEST INTERESTS

William argues that the juvenile court erred in finding that termination of William's parental rights is in the best interests of Brittany. Because our review is independent of the juvenile court's findings, with consideration given to the fact that the juvenile court observed the witnesses and accepted one version of facts over another, we turn to the record.

The evidence supports a conclusion that William is not able to provide adequate care for Brittany. The results of William's court-ordered psychological evaluation indicated that he suffers from mild mental retardation and major depression, only the latter of which is treatable. In addition, Dr. Cottam, William's evaluator, expressed numerous concerns with William's ability to properly parent Brittany, including William's mental health, mild mental retardation, major depression, and prior sexually assaultive behavior. Christ-Anderson, Brittany's therapist, testified that Brittany has several special needs requiring additional parenting skills, such as behavior modification skills and the ability to effectively reward appropriate behavior and provide consequences for inappropriate behavior. According to Christ-Anderson, Brittany's current foster parents have been effectively working with Brittany in these areas.

Furthermore, the evidence suggests that Brittany would be placed in danger if she were under the care of William. In *Brittany I*, William was found to have sexually molested Brittany's sister. William admitted in his psychological evaluation that he had been charged with sexual assault twice in the past. William's sexual assault conviction in 1996 resulted from William's having had sex with a 13-year-old, whom he claimed he thought was 16 years old. In addition, the State presented persuasive evidence through Christ-Anderson's testimony that Brittany had been sexually abused by William.

Finally, both Christ-Anderson and Schoettle, Brittany's Child Protective Services case manager, testified that in their expert opinions, termination of William's parental rights would be in the best interests of Brittany. These circumstances, considered together, convince this court that the juvenile court did not err in finding that termination of William's parental rights is in the best interests of Brittany.

### 3. WILLIAM'S GAL'S STANDING

William's GAL asserts the following issues on appeal: (1) The juvenile court incorrectly found that William was the biological father of Brittany, and (2) the juvenile court incorrectly refused to appoint a special prosecutor because of an existing conflict of interest with the Douglas County Attorney's office.

The State asserts that William's GAL does not have standing to present the above arguments, because the arguments do not pertain to the best interests of William. We assume, without deciding, that William's GAL has standing to bring the above arguments.

### 4. ESTABLISHING PATERNITY

William's GAL asserts that the juvenile court incorrectly failed to require the State to prove paternity by clear and convincing evidence before entering the order terminating William's parental rights. However, paternity was never at issue. Why this is assigned and argued is perplexing, but we will address this issue nonetheless.

In pleadings and affidavits, William has repeatedly identified himself as the natural father of Brittany. "A judicial admission is a formal act done in the course of judicial proceedings

which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true." *Sempek v. Sempek*, 198 Neb. 300, 304, 252 N.W.2d 284, 288 (1977). William's pleadings and affidavits constitute judicial admissions as to paternity by identifying himself as the natural father of Brittany. Consequently, William may not now appeal on the basis of the State's failure to submit evidence material to a fact which William previously and continuously admitted.

The supplemental petition filed on May 10, 2000, in *Brittany I* specifically alleged that William was the father of Brittany. The juvenile court adjudicated Brittany to be a child within § 43-247(3)(a) "insofar as the father is concerned" in an order dated October 18 and thereby implicitly adjudicated William's status as the parent of Brittany. William's prior appeal of the October 18 adjudication did not raise any issue regarding his paternity with regard to Brittany.

Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001); *In re Interest of Marcus W. et al.*, 11 Neb. App. 313, 649 N.W.2d 899 (2002). The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit. *In re Estate of Stull*, 261 Neb. 319, 622 N.W.2d 886 (2001); *In re Interest of Marcus W. et al., supra*. Because of William's judicial admissions of paternity and the juvenile court's implicit adjudication of paternity in *Brittany I*, the juvenile court's termination of William's parental rights cannot be disturbed on the basis of a failure to prove paternity.

### 5. CONFLICT OF INTEREST

William's GAL also argues that the juvenile court erred in denying the motion to appoint a special prosecutor because the Douglas County Attorney's office had a conflict of interest. William's GAL alleges that because Brittany's former GAL had

filed and obtained a default judgment against William and had subsequently become employed with the Douglas County Attorney's office, the office was disqualified from filing a motion to terminate William's parental rights. The juvenile court denied the appointment of a special prosecutor on July 22, 2002. The State contends that the court's denial of William's GAL's motion was a final, appealable order and that William's GAL did not timely appeal the order.

The denial of a motion for a special prosecutor has been impliedly held not to be a final order. See, *State v. Schlund*, 249 Neb. 173, 542 N.W.2d 421 (1996) (stating that State's motion to disqualify defendant's counsel because of conflict of interest affects peripheral matter of counsel qualified to represent defendant rather than subject matter of case, as required in *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993)); *State v. Hatfield*, 218 Neb. 470, 356 N.W.2d 872 (1984) (permitting defendant's appeal at conclusion of trial without discussion of final order for county court's denial of defendant's motion to disqualify prosecuting attorney because of conflict of interest); *State v. Boyce*, 194 Neb. 538, 233 N.W.2d 912 (1975) (permitting defendant's appeal at conclusion of trial without discussion of final order for district court's denial of defendant's motion for appointment of special prosecutor). In the instant case, even if the juvenile court's order was not final, William was not entitled to the appointment of a special prosecutor.

We share William's GAL's concerns regarding Brittany's former GAL's actions in hiring an attorney to file a personal injury action against William on behalf of Brittany, despite the apparent benign motive in doing so. Generally speaking, a GAL's power is limited to matters related to the action to which the GAL is appointed. 42 Am. Jur. 2d *Infants* §§ 175, 183, and 185 (2000). The Nebraska Supreme Court has adopted a similar position in *Orr v. Knowles*, 215 Neb. 49, 58, 337 N.W.2d 699, 705 (1983), in which the court stated that a GAL "only has the power to act in the single situation for which he or she is appointed."

Neb. Rev. Stat. § 43-272 (Cum. Supp. 2002) states that a GAL has the duty to "protect the interests of the juvenile for whom he or she has been appointed guardian, and shall be deemed a parent of the juvenile *as to those proceedings with*

*respect to which his or her guardianship extends.*" (Emphasis supplied.) Further, Neb. Rev. Stat. § 43-272.01(2)(h) (Reissue 1998) permits a GAL to "file a petition in the juvenile court on behalf of the juvenile, including a supplemental petition as provided in [Neb. Rev. Stat. §] 43-291 [(Reissue 1998)]." However, neither statute provides statutory authority for a GAL to assist those he or she represents in initiating litigation outside of the proceeding in which the GAL was appointed to represent.

Nevertheless, we do not find that Brittany's former GAL's actions resulted in the Douglas County Attorney's office having a conflict of interest. First, the record does not reflect that Brittany's former GAL ever obtained an actual money judgment against William. While a default judgment was entered against William, the record reflects a letter dated November 26, 2001, which threatened dismissal for lack of prosecution if no action was taken within 30 days. A certificate of readiness for trial was then filed, but no evidence of an entry of a money judgment exists in the record.

Even if a conflict of interest existed, this conflict would not be imputed on the entire Douglas County Attorney's office. It does not appear that the Nebraska Supreme Court has addressed the issue of whether a disqualification of one government attorney is imputed on the entire disqualified government attorney's office. However, other states that have addressed this issue have not imputed a disqualification to the entire government office.

The U.S. Court of Appeals for the Sixth Circuit addressed the issue in *United States v. Caggiano,* 660 F.2d 184 (6th Cir. 1981), in which a district court disqualified an entire government attorney's office in Memphis, Tennessee, because of an alleged appearance of a conflict of interest with one of the attorneys in the office. The Sixth Circuit stated that there is "quite a difference in the relationship between law partners and associates in private law firms and lawyers representing the government." *Id.* at 190. The court then quoted ABA Comm. on Prof. Ethics Formal Op. 342 (1975), which ruled that other government lawyers in an office were not disqualified from handling matters that one of the office's new associates was involved in prior to beginning work at the government office. The Sixth Circuit then reversed the district court's ruling.

Other states have held similarly to that decision by the Sixth Circuit and some have quoted or cited *Caggiano, supra,* or ABA Comm. on Prof. Ethics Formal Op. 342. See, e.g., *Frazier v. State,* 257 Ga. 690, 362 S.E.2d 351 (1987) (holding that government lawyer's disqualification was not imputed to other government lawyers associated with disqualified government lawyer); *State v. Fitzpatrick,* 464 So. 2d 1185 (Fla. 1985) (quashing district court's ruling that state attorney's office was not distinct from private law firm for purposes of imputing disqualification of one attorney to all others in office); *People v. Lopez,* 155 Cal. App. 3d 813, 202 Cal. Rptr. 333 (1984); *State v. Laughlin,* 232 Kan. 110, 652 P.2d 690 (1982); *Pisa v. Commonwealth,* 378 Mass. 724, 393 N.E.2d 386 (1979); *Commonwealth v. Miller,* 281 Pa. Super. 392, 422 A.2d 525 (1980). But see *Collier v. Legakes,* 98 Nev. 307, 646 P.2d 1219 (1982).

In the instant case, the record reflects that Brittany's former GAL's only participation was her involvement as Brittany's former GAL. There is no evidence that suggests Brittany's former GAL was involved in the case after becoming employed with the Douglas County Attorney's office or that she was not effectively screened from any direct or indirect participation after beginning her employment with the Douglas County Attorney's office. As such, this court now finds that even if a conflict of interest did exist, such a conflict would not be imputed to the entire Douglas County Attorney's office.

Finally, we do not find an appearance of impropriety with the Douglas County Attorney's office. William's GAL asserts that Brittany's former GAL's outstanding judgment against William on behalf of Brittany created the appearance of impropriety because she was a judgment creditor. However, this argument is not persuasive.

Generally, even though a minor may be required to appear through a GAL, the child is the real party of interest. 42 Am. Jur. 2d *Infants* §§ 172 and 182 (2000). Furthermore, a GAL does not have the authority to receive the payment of a judgment rendered in favor of the child. *Id.* at § 190.

In this case, Brittany's former GAL, through her employer at the time, hired an attorney on behalf of Brittany. The attorney filed the civil action against William. The pleading clearly

delineates that the action was filed "By and Through [Brittany's] Guardian Ad Litem." While outside the scope of the statutory defined authority, the pleading is clear on its face that it was filed by a GAL and that any interest in the judgment is owned by Brittany. As such, no appearance of impropriety existed on behalf of the Douglas County Attorney's office, and thus, the appointment of a special prosecutor was not necessary. The juvenile court did not err in denying William's GAL's motion to appoint a special prosecutor.

## VI. CONCLUSION

The juvenile court's order terminating William's parental rights with regard to Brittany is affirmed. Termination of parental rights pursuant to § 43-292(7) does not require the State to provide a plan of rehabilitation prior to terminating the parent's rights. Accordingly, the State's alleged failure to do so cannot be error. In addition, the juvenile court did not err in not requiring the State to present evidence that William is the biological father of Brittany. William has never objected to the premise that Brittany is his biological daughter. Further, this court's prior review of this case affirmed an implicit ruling that William is Brittany's biological parent. Under the law-of-the-case doctrine, the ruling that William is Brittany's biological father is conclusive. Finally, there is sufficient evidence on the record to find that termination of William's parental rights is in the best interests of Brittany. As such, the juvenile court properly terminated William's parental rights.

With regard to the denial of the appointment of a special prosecutor, we find no error on the part of the juvenile court in denying this request. William did not timely appeal this issue. Additionally, there is insufficient evidence to find that the Douglas County Attorney's office had a conflict of interest. The juvenile court's decision is affirmed.

AFFIRMED.