IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF MESSIAH S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF MESSIAH S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
ERIC S., APPELLANT.

Filed August 19, 2014.    No. A-13-1012.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Affirmed.

Joseph E. Dalton, of Dalton Law Office, P.C., L.L.O., for appellant.

Maureen Lamski, Deputy Lancaster County Attorney, for appellee.

INBODY, Chief Judge, and IRWIN and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Eric S. appeals from the order of the juvenile court which terminated his parental rights to his son, Messiah S. Eric's primary argument on appeal is that the State did not present sufficient evidence to demonstrate that he is Messiah's father; ipso facto, he reasons, the juvenile court cannot terminate parental rights if he does not have any existing parental rights to terminate.

Eric specifically assigns and argues that the juvenile court erred in failing to grant his motion for a directed verdict at the close of the State's case, in permitting the State to reopen its case to submit an additional exhibit into evidence, and in finding sufficient evidence to terminate his parental rights. We find Eric's appeal to be meritless, and we affirm.

- 1 -

## II. BACKGROUND

On December 26, 2012, the State filed a second amended petition with the juvenile court which alleged that Messiah, who was then 3 months old, was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) as a result of the fault or habits of his "alleged father/father/custodian, Eric." Specifically, the petition alleged that Messiah was within the meaning of § 43-247(3)(a) because (1) since February 5, 2012, Eric has been involved in at least one physical and/or verbal "domestic confrontation[]" with Messiah's mother in the presence of one of Messiah's siblings; (2) Eric has a history of assaultive and threatening behaviors; (3) in early November 2012, Eric refused to allow and/or prevented police and the Nebraska Department of Health and Human Services (the Department) from obtaining physical custody of Messiah even though Eric knew there was a court order regarding Messiah's temporary custody; (4) in early November 2012, Eric engaged in a physical altercation with police and/or physically resisted police while holding Messiah; (5) Eric has admitted to smoking marijuana on a daily basis; (6) a hair follicle test completed on Messiah revealed the presence of an illicit substance; and (7) Eric's actions place Messiah at risk for harm.

On January 2, 2013, a few days after the State filed its second amended petition, the State also filed a motion to terminate Eric's parental rights to Messiah. In the motion, the State alleged that termination of Eric's parental rights was warranted pursuant to Neb. Rev. Stat. § 43-292(2) (Cum. Supp. 2012), because he had substantially and continuously or repeatedly neglected and refused to give Messiah or a sibling of Messiah necessary care and protection; § 43-292(4), because he is unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which is found by the court to be seriously detrimental to the health, morals or well-being of Messiah; and § 43-292(9), because he has subjected Messiah or a sibling of Messiah to aggravated circumstances, including but not limited to, abandonment, torture, chronic abuse, or sexual abuse. In addition, the State alleged that termination of Eric's parental rights was in Messiah's best interests.

On July 11, 2013, a hearing was held. At this hearing, Eric pled no contest to the allegations in the second amended petition. As a result of Eric's plea, the juvenile court adjudicated Messiah as a child within the meaning of § 43-247(3)(a). The court then set a hearing date on the motion to terminate Eric's parental rights.

The hearing on the State's motion to terminate Eric's parental rights began on August 19, 2013, and continued on various dates throughout August and September. At the hearing, the State adduced evidence concerning Eric's criminal history and his history of verbally and physically aggressive behavior, concerning the violent circumstances surrounding the Department's obtaining physical custody of Messiah, and concerning Eric's incarceration at the time of the termination hearing.

The State also adduced evidence that Eric was Messiah's father. As a part of the State's case, it called Eric to testify. During Eric's testimony, he referred to Messiah as his "son" on multiple occasions. At one point, when referring to his relationship with Messiah and Messiah's mother, Eric testified that he planned on being involved in his "son's" life. In addition, during the testimony of Messiah's mother, she specifically testified that "Eric is Messiah's father." She also referred to being pregnant with Eric's baby at the time she was pregnant with Messiah. A

nurse working in the nursery at the hospital where Messiah was born identified Eric as Messiah's father. The State offered an exhibit which indicated that in March 2013, Messiah's mother had filed a complaint in the district court against Eric requesting that the court find that Eric is Messiah's father and enter an order regarding Messiah's custody and child support. Messiah's mother testified that she is waiting to move forward with that case until the termination hearing was concluded.

After the State rested its case, Eric made an oral motion for a directed verdict. Eric argued that a directed verdict in his favor was warranted because the State had failed to make its prima facie case: "In particular, [the State has failed to] establish paternity of [Eric] over [Messiah]." In response to Eric's motion, the State argued that it had presented testimony that Eric was Messiah's father. The State further argued that even if there was no such testimony, that genetic testing had actually been completed. The State indicated that it was not prepared to offer a report from that testing on that day, but asked "leave to reopen the case and offer that." The district court overruled Eric's motion for a directed verdict.

At a later hearing date, the State asked for the court's permission to reopen its case in order to offer into evidence exhibit 46, which was the report from the genetic testing completed on Eric and Messiah. This report reveals that Eric is, in fact, Messiah's biological father. Eric objected to the admission of exhibit 46. First, he argued that the State should not be permitted to reopen its case after it had previously rested. Second, he argued that the juvenile court could not make a determination regarding Messiah's paternity while the paternity and custody case was still pending in the district court. The juvenile court ultimately received exhibit 46 over Eric's objections.

On October 15, 2013, the juvenile court entered an order terminating Eric's parental rights to Messiah. In the order, the court specifically found that Eric is Messiah's father. The court also found, "The elements in the motion for termination of parental rights of Eric . . . have absolutely been proven by clear and convincing evidence. Furthermore, it is clearly in the best interests of Messiah for Eric['s] parental rights to be terminated."

Eric appeals from this order.

## III. ASSIGNMENTS OF ERROR

On appeal, Eric assigns three errors. First, Eric asserts that the juvenile court erred in failing to grant his motion for a directed verdict at the close of the State's case. Second, he asserts that the court erred in permitting the State to reopen its case to submit into evidence the results of genetic testing completed on Eric and Messiah. Finally, Eric asserts that the court erred in finding sufficient evidence to terminate his parental rights.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Hamilton v. Bares*, 267 Neb. 816, 678 N.W.2d 74 (2004).

The matter of permitting a party to withdraw his or her rest is within the trial court's discretion, and the trial court's ruling will not be disturbed on appeal absent an abuse of that discretion. *Jessen v. DeFord*, 3 Neb. App. 940, 536 N.W.2d 68 (1995).

## 2. MOTION FOR DIRECTED VERDICT

Eric asserts that the juvenile court erred in failing to grant his motion for a directed verdict at the close of the State's case because the State did not offer sufficient evidence to prove that Eric is Messiah's biological father. Essentially, Eric argues that before a juvenile court can enter an order terminating a father's parental rights, there must be evidence of a prior, formal acknowledgment of paternity or a prior adjudication of the fact of paternity. Eric's assertion is simply without merit.

First, we note that Eric does not provide any statutory or case law which stands for the proposition that there must be a prior, formal finding of paternity before the entry of an order terminating a father's parental rights. In fact, this court has previously implied that there does not need to be evidence of a formal finding of paternity before a court can terminate a father's parental rights. See *In re Interest of Brittany S.*, 12 Neb. App. 208, 670 N.W.2d 465 (2003).

In *In re Interest of Brittany S.*, *supra*, the father's guardian ad litem argued that the juvenile court had erred in failing to require the State to prove paternity by clear and convincing evidence before entering the order terminating the father's parental rights. We rejected this argument. First, we noted that the father's paternity was never made an issue during the juvenile court proceedings. Next, we found that the father had made a judicial admission that he was the child's father when he identified himself as such repeatedly in pleadings and affidavits. Finally, we found that when the juvenile court adjudicated the child to be within the meaning of § 43-247(3)(a) "'insofar as the father is concerned'" and the father did not appeal from that finding, that there could be no further challenge of the father's paternity during the termination proceedings. *In re Interest of Brittany S.*, 12 Neb. App. at 217, 670 N.W.2d at 472-73.

Our holding in *In re Interest of Brittany S., supra*, suggests that a prior, formal finding of paternity is not necessary before an order terminating a father's parental rights can be entered. Contrary to Eric's assertion on appeal, there are other ways of establishing paternity for the purpose of parental termination proceedings.

Here, during the State's case in chief, it offered a variety of testimony which demonstrated that Eric was Messiah's biological father. Messiah's mother repeatedly testified that Eric was Messiah's father. The nurse who took care of Messiah in the hospital after he was born identified Eric as Messiah's father. In addition, the State indicated to the court that genetic testing had been completed on Eric and Messiah and that the State would be able to offer that evidence at an upcoming hearing date. Perhaps the most compelling testimony on this subject came from Eric, himself, who repeatedly testified, under oath, that Messiah was his "son." It is

perplexing why Eric would testify that he was Messiah's father, and then suddenly, and for the first time in the juvenile court proceedings, challenge Messiah's paternity at the close of the State's case. However, despite the reason for Eric's assertions during his oral motion for a directed verdict, we conclude that the juvenile court did not err in overruling the motion.

During the State's case in chief, it presented sufficient evidence for the juvenile court to find that Eric was, in fact, Messiah's father. Thus, when we resolve every controverted fact in the State's favor and give the State the benefit of every inference which can reasonably be deduced from the evidence, we cannot say that the juvenile court erred in overruling Eric's motion for directed verdict.

### 3. REOPENING OF STATE'S CASE

Eric asserts that the juvenile court erred in permitting the State to reopen its case in order to offer into evidence exhibit 46, which is a copy of a report from the genetic testing of Eric and Messiah which proves that Eric is Messiah's biological father. In his brief on appeal, Eric does not explain exactly why the court erred in permitting the State to reopen its case in order to offer exhibit 46. Instead, he states, "While exhibit 46 is evidence that could be used to establish paternity in the paternity action, it was clearly relied upon by the court in this action to terminate parental rights. This reliance by the court was clearly prejudicial and the court erred in receiving exhibit 46." Brief for appellant at 6.

The reopening of a case to receive additional evidence is a matter within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion. *Jessen v. DeFord*, 3 Neb. App. 940, 536 N.W.2d 68 (1995). Among factors traditionally considered in determining whether to allow a party to reopen a case are (1) the reason for the failure to introduce the evidence, e.g., counsel's inadvertence, a party's calculated risk or tactic, or the court's mistake; (2) the admissibility and materiality of the new evidence to the proponent's case; (3) the diligence exercised by the requesting party in producing the evidence before his or her case closed; (4) the time or stage of the proceedings at which the motion is made; and (5) whether the new evidence would unfairly prejudice the opponent. *Id*. In this case, a majority of these factors weigh in favor of permitting the State to reopen its case to offer exhibit 46.

Presumably, the State did not initially offer exhibit 46 into evidence during its case in chief because the issue of Eric's paternity had never been contested during the juvenile court proceedings. Before Eric made an oral motion for a directed verdict, he had never before asserted in any fashion that he was not Messiah's father. Once Eric had raised the issue of Messiah's paternity, then exhibit 46 became relevant and material to the State's proving that Eric was, in fact, Messiah's father. The State indicated at the time that Eric made his motion for a directed verdict that it intended to offer exhibit 46 at a later hearing date. It simply did not have the exhibit in court at the time the motion for directed verdict was made. As such, at that time, not only was Eric aware that exhibit 46 existed and was in the State's possession, but he also was aware that the State intended on offering the exhibit into evidence.

Taken together, the circumstances described above lend support to the juvenile court's decision to permit the State to reopen its case and to offer into evidence exhibit 46. The court did not abuse its discretion in this regard.

#### 4. TERMINATION OF ERIC'S PARENTAL RIGHTS

Eric asserts that the juvenile court erred in terminating his parental rights to Messiah. However, Eric does not challenge the court's finding that termination was warranted pursuant to § 43-292(2), (4), or (9), nor does he challenge the court's finding that termination of his parental rights is in Messiah's best interests. Instead, Eric asserts only that the juvenile court erred in terminating his parental rights because there was not sufficient evidence presented to prove that he is Messiah's father. Essentially, Eric once again argues that there must be a prior, formal finding of paternity before a court can terminate a father's parental rights. We note that in our analysis above, we found this argument to lack any merit.

We also note the confusing nature of Eric's argument. Although Eric has appealed the juvenile court's termination of his parental rights related to Messiah and seeks an order of this court finding that his paternal rights should not have been terminated, he seemingly argues in that same appeal that there is no evidence that he even has parental rights in the first place. We can find no logical reconciliation of these two positions in the context of an appeal to prevent termination of parental rights.

Despite this confusion, in order to thoroughly address Eric's assigned error, we reiterate that the record belies Eric's assertion that the juvenile court had insufficient evidence of paternity. As we described in more detail above, the State offered testimony which demonstrated that Eric was Messiah's father. In fact, Eric, himself, testified under oath that he was Messiah's father. In addition, as we found above, the juvenile court did not abuse its discretion in permitting the State to reopen its case in order to offer exhibit 46 into evidence. Exhibit 46 is a report from genetic testing which definitively proves that Eric is Messiah's biological father. Accordingly, there was sufficient evidence to demonstrate that Eric is Messiah's father and Eric's assertions to the contrary lack merit.

### V. CONCLUSION

We find no merit to the errors argued by Eric, and we affirm the order of the juvenile court terminating his parental rights to Messiah.

AFFIRMED.