IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

IN RE INTEREST OF ZY'AIR T. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ZY'AIR T. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

PIERRE T., APPELLANT.

Filed May 9, 2017.    No. A-16-1074.

Appeal from the Separate Juvenile Court for Douglas County: VERNON DANIELS, Judge. Affirmed.

Ashley L. Albertsen, of Oestmann & Albertsen Law, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, and Jennifer C. Clark, Deputy Douglas County Attorney, for appellee.

INBODY, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Pierre T. appeals from the order of the juvenile court which terminated his parental rights to his three daughters. On appeal, Pierre challenges the juvenile court's findings that his parental rights should be terminated pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016), that the termination of his parental rights was in the children's best interests, and that the termination did not violate his due process rights. Upon our de novo review of the record, we find that sufficient evidence was presented to warrant the termination of Pierre's parental rights to his daughters Zy'Air T., Zyriha T., and Heaven P. As such, we affirm the opinion of the juvenile court.

- 1 -

BACKGROUND

These juvenile court proceedings involve three children: Zy'Air, born in 2008, Zyriha, born in 2009, and Heaven, born in 2011. Veronica P. is the biological mother to all three children. Pierre is the biological father to Zy'Air and Zyriha and the legal father to Heaven, but contests his paternity. Veronica and Pierre were never married. Veronica relinquished her parental rights to Zy'Air and Zyriha on May 23, 2016. Veronica's parental rights as to Heaven were terminated on September 1, 2016, after a plea of no contest under Neb. Rev. Stat. § 43-292(2) and (7). Veronica has filed no appeal in this matter. For purposes of Pierre's appeal, we will discuss Veronica's involvement as needed.

On May 22, 2012, the State filed a petition alleging that the children came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Specifically, the petition alleged that Veronica subjected the children to inappropriate discipline or contact, failed to provide the children with safe housing, and failed to provide proper parental care for the children. The State also filed a motion for temporary custody the same day. The motion alleged that Zy'Air and Zyriha had been taken to Creighton University Hospital, where an assault on a child was reported. Veronica told officers that Zy'Air and Zyriha had been staying with Pierre's girlfriend for approximately two months while Pierre was incarcerated. Zy'Air and Zyriha had some bruises, but the officers could not determine if they were from abuse or from normal play. The children were discharged from the hospital on May 20, 2012, and Zy'Air and Zyriha were placed into protective custody. The next day, officers responded to reports that Heaven and her brother were being abused. The officers noticed bruises on Heaven and her brother. Additionally, officers noticed that Heaven did not appear to have any clothing in the home and that there was minimal food and a lack of other basic necessities. The officers placed both Heaven and her brother into protective custody. The juvenile court issued an order for immediate custody and placed the children in temporary custody of the Nebraska Department of Health and Human Services (DHHS) on May 22, 2012.

On November 1, 2012, the State filed a second supplemental petition alleging that Zy'Air and Zyriha came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) by the faults and habits of Pierre, alleging that Pierre's girlfriend subjected the children to inappropriate physical contact, that Pierre resided with this girlfriend, that Pierre failed to provide safe housing for the children, and that Pierre failed to provide the children with proper parental care. On December 6, 2012, the State filed an amended second supplemental petition against Pierre, additionally alleging that Pierre's use of drugs and/or alcohol placed the children at risk for harm.

On January 7, 2013, the juvenile court found by a preponderance of the evidence that Zy'Air, Zyriha, and Heaven lacked proper parental care due to Pierre's use of alcohol and/or drugs, his failure to provide proper parental care, and that due to his behavior, were at risk for harm. The juvenile court found that Zy'Air, Zyriha, and Heaven came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) and that it would be in the children's best interests to remain in the temporary custody of DHHS. The court ordered that Pierre obtain and maintain safe housing, obtain a legal source of income, abstain from the consumption of drugs and/or alcohol, undergo random urine testing, and submit to chemical dependency and psychological evaluations.

On March 30, 2016, the State filed motions for termination of parental rights against both Veronica and Pierre. The State alleged that Zy'Air, Zyriha, and Heaven came within the meaning of Neb. Rev. Stat. § 43-292(2), (6), and (7) and that terminating the parental rights between Pierre and the children was in the best interests of the children. On September 1, 2016, a hearing was held on the State's second motion for termination of parental rights concerning Pierre. The hearing was continued and concluded on October 19, 2016.

At the termination hearing testimony was provided by four employees of the Nebraska Family Collaborative, the family therapist, the children's foster mother, and Pierre himself. Only two of the Nebraska Family Collaborative employees had direct interaction with the family. Family permanency specialist Tyrone Charleston was assigned to the children's case from September 2014 to December 2015. Charleston testified that he was unable to contact Pierre until March or April of 2015. By the time Charleston made contact with Pierre, Pierre had been absent for approximately two years. Once Charleston was able to contact Pierre, Charleston stated that Pierre made very gradual progress with his rehabilitation plan.

Family permanency specialist Chenea Starks was assigned to the children's case in June 2016. Starks testified that Pierre had made very limited progress in terms of his rehabilitation program. Starks testified that she was never able to perform an inspection of Pierre's home because he would not provide her with his address. Starks testified at the termination hearing that in her opinion, it was in the best interests of the children to terminate Pierre's parental rights.

Andrea Young, a licensed therapist with Acuity Counseling Professionals, testified at the termination hearing that she had seen Zy'Air in therapy for two years. Young diagnosed Zy'Air with post-traumatic stress disorder and behavioral issues. Young testified that these disorders were not necessarily lifelong disorders. Young testified that one of Zy'Air's biggest issues is that Zy'Air believed that infants were more important than other children. Young attributed this to her feelings of abandonment by her parents, particularly her father.

Young began therapy with Zyriha in September 2015. Zyriha displayed anger, disrespect, and inappropriate attention-seeking behaviors. Young testified that the foster parents provided structure to the children, allowing their behavioral issues to improve. Without this structure, Young believed that more serious behavioral issues could become a problem.

Pierre began therapeutic visitation with Zy'Air and Zyriha in Young's office beginning in September 2015. Pierre refused visitation with Heaven. Family therapy lasted for 1 hour per week. Young testified that the children had trust issues with their father and did not understand why he had been absent for such a long period of time. After nearly a year of therapeutic visitation, Young believed that the children had developed a relationship with Pierre, but they still had significant trust issues. The children would still seek aide from either Young or their foster mother during the therapeutic visitations. Young testified that Pierre had progressed to the point where supervised visits in a non-clinical setting could begin, however she did not believe placement of the children with Pierre should be pursued. She noted Zy'Air had continually maintained that she wanted to be adopted. Young testified that in her professional opinion, permanent placement with the foster mother would be in the best interests of the children and that Pierre's parental rights should be terminated.

- 3 -

Pierre testified at the termination hearing that he was the father of Zy'Air and Zyriha, but that he was not the father of Heaven. Pierre kept in contact with Veronica during his two-year absence. Pierre believed that since Veronica had obtained housing and was in a better position to receive custody of the children, he would "back down from the case" and then Veronica would transfer custody of the children to him. As a result, he chose to absent himself from the children for almost 2 years. Pierre testified that Veronica had misled him as to the status of receiving custody of the children from DHHS, but admitted that he had rarely communicated personally with Zy'Air and Zyriha via telephone or otherwise.

Pierre testified that once he learned that Veronica had not been honest about the situation with the children, he took steps to begin reunification. He contacted Charleston about how to pay for a chemical dependency evaluation. He obtained a job and maintained employment for a year prior to the termination hearing. He completed the Fathers for a Lifetime program, but not until after the termination proceedings were initiated, some 3 years following the order of the juvenile court. Similarly, after the termination hearing began, he testified that he had obtained housing, but admitted that the residence needed maintenance before a walk-through could be completed. Pierre was ordered to obtain housing in January 2013. The housing he finally did obtain was unsubstantiated by any family permanency specialist at the time of hearing.

Pierre testified that he had participated in therapeutic visitation with Zy'Air and Zyriha for a year. He admitted to missing one or two visitations due to lack of transportation. Pierre testified that he thought he had a very close bond with the children and that he plays a big part in their lives and there is a bond between him and the children. Pierre testified that he did not believe it was in the children's best interests for his parental rights to be terminated.

After the termination hearing, the juvenile court found that the State proved by clear and convincing evidence that grounds for termination of Pierre's parental rights existed under § 43-292(2), (6), and (7). The court further found that it is in the children's best interests to terminate Pierre's parental rights. An order terminating Pierre's parental rights to Zy'Air, Zyriha, and Heaven was entered.

Pierre appeals that order.

## ASSIGNMENTS OF ERROR

Restated, consolidated, and reordered, Pierre alleges on appeal that the juvenile court erred in (1) finding that the State proved the relevant statutory grounds for termination of his parental rights; (2) finding that termination of his parental rights was in the children's best interests; and (3) violating his Due Process rights since no evidence was adduced that he was the biological or legal father of Heaven.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of LeVanta S.*, 295 Neb. 151, 158, 887 N.W.2d 502, 509 (2016). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

ANALYSIS

STATUTORY GROUNDS

Pierre asserts that the juvenile court erred in terminating his parental rights pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7). Upon our de novo review, we find that the evidence clearly and convincingly demonstrates that Zy'Air, Zyriha, and Heaven were in an out-of-home placement for at least 15 of the most recent 22 months prior to the termination hearing, pursuant to Neb. Rev. Stat. § 43-292(7). As a result, we need not specifically address whether the State presented clear and convincing evidence to demonstrate that termination was also warranted pursuant to Neb. Rev. Stat. § 43-292(2) or (6). See, *In re Interest of Isabel P.*, 293 Neb. 62, 81, 875 N.W.2d 848, 861 (2016).

Termination of parental rights is warranted whenever one or more of the statutory grounds provided in Neb. Rev. Stat. § 43-292 are established. Section 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Justin H.*, 18 Neb. App. 718, 726, 791 N.W.2d 765, 772 (2010).

At the hearing on the State's motion to terminate Pierre's parental rights, there was uncontradicted evidence which demonstrated that Zy'Air, Zyriha, and Heaven were placed in the temporary custody of DHHS in May 2012. They remained in out-of-home placement for the duration of the juvenile court proceedings. As such, by the time the State filed its motion to terminate Pierre's parental rights in March 2016, the children had been in out-of-home placement for approximately 46 months. By the time the termination hearing began, the children had been in out-of-home placement for more than 51 months. Accordingly, Zy'Air, Zyriha, and Heaven were in an out-of-home placement for 15 or more months of the most recent 22 months as § 43-292(7) sets forth.

There is clear and convincing evidence that termination of Pierre's parental rights was warranted pursuant to § 43-292(7). In light of this fact, we need not further address the sufficiency of the evidence to demonstrate that termination was also warranted pursuant to 23-292(2) or (6). See, *In re Interest of Isabel P.*, supra. Pierre's assignment of error which relates to the sufficiency of the statutory authority to support termination is without merit.

BEST INTERESTS

Having found that a basis for termination of Pierre's parental rights exists pursuant to § 43-292(7), we decline to address the sufficiency of the evidence demonstrating that termination was also appropriate pursuant to § 43-292(2) or (6). Therefore, we treat our discussion of whether termination of Pierre's parental rights is in the children's best interests as though § 43-292(7) is the only statutory basis for termination.

In cases where termination of parental rights is based solely on § 43-292(7), the Nebraska Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is, in fact, in the child's best interests. *In re Interest of Aaron D.*, 269 Neb. 249, 260, 691 N.W.2d 164, 173 (2005). In such a situation, because the statutory ground for termination does not require proof of such matters as abandonment, neglect,

unfitness, or abuse, as the other statutory grounds do, proof that termination of parental rights is in the best interests of the child requires clear and convincing evidence of circumstances as compelling and pertinent to a child's best interests as those enumerated in the other subsections of § 43-292. *Id.*

Pierre argues that termination of his parental rights is not in the children's best interests. Specifically, he argues that the evidence adduced at the termination hearing by the various family services professionals does not rise to the level of clear and convincing. We disagree.

The evidence presented at the termination hearing revealed that Pierre has made very little progress towards reunification with his children. Pierre was unwilling or unable to comply with most of the court-ordered requirements for reunification with his children. The court ordered that Pierre obtain and maintain safe housing, obtain a legal source of income, submit to random urine analysis, abstain from the consumption of drugs and/or alcohol, complete the Fathers for a Lifetime program, submit to chemical dependency and psychological evaluations, participate in supervised visitation with the children as arranged by DHHS, and utilize the services of DHHS in order to reunify with his children. Despite the efforts of DHHS to assist Pierre, he failed to avail himself of most of the services offered to him in a timely and adequate fashion. Multiple family services professionals testified that Pierre was making some progress, but this progress was very slow, and that it would be in the children's best interests if Pierre's parental rights were terminated.

The juvenile court in this case ordered Pierre to comply with rehabilitation plans on January 7, 2013. However, testimony provided at the termination hearing by two separate Nebraska Family Collaborative family permanency specialists indicated that Pierre did not even begin his participation in any court-ordered services until September 2015.

To his credit, his urine samples all tested negative for the presence of drugs and alcohol. However, he never complied with the order to obtain a substance abuse evaluation. He verified the existence of employment to family permanency specialists in mid to late 2015 through the time of hearing. The Fathers for a Lifetime course was not started until termination proceedings were initiated and not completed until more than 3 years had passed from the date first ordered. Housing was not obtained until the termination proceedings began. Pierre admitted that the residence he obtained was in need of maintenance before a walk-through could be completed. No independent testimony was provided substantiating that he had obtained this housing or that he had reported his acquisition to the family permanency specialist. Finally, after a more than 3 year absence, he did participate in one hour per week therapeutic visitation. However, as of the time of hearing, his recommended contact level remained at a supervised level.

Essentially, the evidence presented at the termination hearing, when taken together, reveals that while Pierre was able to establish a relationship with Zy'Air and Zyriha, he made extremely slow progress toward reunification with his children during the pendency of the juvenile court proceedings.

Pierre's efforts since September 2015, while commendable, amount to "too little too late." This court has previously stated, "Last minute attempts by parents to comply with the rehabilitation plan do not prevent termination of parental rights." *In re Interest of Tabitha J.*, 5 Neb. App. 609, 619-20, 561 N.W.2d 252, 260 (1997). Here, Pierre did not make any real efforts toward achieving reunification with his children until the children had already been in an out-of-home placement for

approximately 40 months. DHHS offered Pierre numerous chances to comply with the rehabilitation goals, but Pierre was absent for an extended period of time. Pierre was not a part of the children's lives for 2 years. When the children asked where Pierre had been, Pierre gave different answers. He told the children that he had things to do, or that they would have a better chance of being reunited with their mother. He additionally told them that he had made some bad choices and was in prison. After his 2-year absence, Pierre then made an attempt to utilize DHHS' services. When he began to participate, he only made gradual progress towards reunification. After a year of therapeutic visitation, he was only able to be approved for supervised visitation in a non-clinical setting. This is a far-cry from being able to effectively parent his children, especially given the fact that it has been 4 years since they have been in out-of-home placement.

Given all of the evidence of Pierre's failure to timely and completely cooperate and participate with the court-ordered rehabilitation plan, it is clear that he is only marginally closer to achieving reunification with his children than he was when these proceedings were initiated. We have repeatedly stated that where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable amount of time, the best interests of the child require termination of the parental rights; children cannot and should not be suspended in foster care, or be made to await parental maturity. See, e.g., *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999).

In the approximately 4 years that the children have been in an out-of-home placement, Pierre has not made sufficient progress toward achieving reunification of any kind. Therefore, based upon our de novo review of the record, we affirm the finding of the juvenile court that termination of Pierre's parental rights is in the children's best interests.

DUE PROCESS REGARDING HEAVEN

Pierre asserts that the juvenile court erred in violating his Due Process rights as no evidence was adduced that he was the biological or legal father of Heaven. Essentially, Pierre argues that before a juvenile court can enter an order terminating a father's parental rights, there must be evidence of actual paternity or a prior adjudication of the fact of paternity. Pierre's assertion is simply without merit. This court has previously implied that there does not need to be evidence of a formal finding of paternity before a court can terminate a father's parental rights. See, *In re Interest of Brittany S.*, 12 Neb. App. 208, 670 N.W.2d 465 (2003).

In *In re Interest of Brittany S.*, *supra*, the father's guardian ad litem argued that the juvenile court had erred in failing to require the State to prove paternity by clear and convincing evidence before entering the order terminating the father's parental rights. We rejected this argument. First, we noted that the father's paternity was never made an issue during the juvenile court proceedings. Next, we found that the father had made a judicial admission that he was the child's father when he identified himself as such repeatedly in pleadings and affidavits. Finally, we found that when the juvenile court adjudicated the child to be within the meaning of § 43-247(3)(a) "'insofar as the father is concerned'" and the father did not appeal from that finding, that there could be no further challenge of the father's paternity during the termination proceedings. *In re Interest of Brittany S.*, 12 Neb. App. at 217, 670 N.W.2d at 472-73.

Our holding in *In re Interest of Brittany S.*, is applicable in this case. During the termination hearing, Pierre admitted that Heaven "was put on my child support." Pierre's attorney stated during the hearing that there was a paternity decree in place stating that Pierre is the legal father of Heaven. The juvenile court determined that the termination proceeding could not be used to collaterally attack the paternity decree. Collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter. *Jesse B. v. Tyler H.*, 293 Neb. 973, 883 N.W.2d 1 (2016). Therefore, we agree with the juvenile court that it was improper for Pierre to attempt to collaterally attack the paternity decree.

We find Pierre's argument to be tortured at best. During the pendency of these proceedings, he has refused visitation with Heaven, claiming she is not his child. Now, on appeal, he claims that the juvenile court should not have terminated his parental rights to a child he does not wish to maintain a relationship with or claim. However, upon our de novo review we find there was sufficient evidence for the juvenile court to find that Pierre was, in fact, Heaven's father, and to find that it was in the child's best interests to terminate his parental rights.

## CONCLUSION

Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Pierre's parental rights to Zy'Air, Zyriha, and Heaven. As such, we affirm the order of the juvenile court terminating his parental rights to the minor children.

AFFIRMED.